No. 01-15-00604-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/4/2015 4:34:10 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON

D&R CONSTRUCTORS, INC., MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING, AND FLORENCE RUSHING,
*Appellants,*

v.

TEXAS GULF ENERGY, INC. ON BEHALF OF CS BANKERS V LLC AND TEXAS GULF FABRICATORS, ET AL.,
*Appellees.*

Appeal from the 270th District Court of Harris County, Texas;
Trial Court Cause No. 2013-00543; Hon. Brent Gamble, Presiding

APPENDIX TO BRIEF OF APPELLEES

**Tab**

| | |
|---|---|
| A | Final Judgment (2 CR 977–979) |
| B | Summary Judgments for Fabricators and Hendry (1 CR 593; 2 CR 1967; 2 CR 1944–1945) |
| C | Summary Judgment for Smith (2 CR 1580) |
| D | Sanctions Order (2 CR 2025–2026) |
| E | Note (1 CR 407–410) |
| F | Deed of Trust (1 CR 421–438) |
| G | Loan Sale Agreement (1 CR 391–406) |
| H | Foreclosure Notices (1 CR 439–452) |
| I | TEX. PROP. CODE § 51.002 |
| J | TEX. PROP. CODE § 51.0075 |

# Tab A
**Final Judgment
(signed April 13, 2015)
2 CR 977–979**

CAUSE NO. 2013-00543

| | | |
|---|---|---|
| TEXAS GULF ENERGY, INC. ON BEHALF § | | IN THE 270th JUDICIAL |
| OF CS BANKERS V, LLC AND TEXAS § | | |
| GULF FABRICATORS, INC. § | | |
| § | | |
| vs. § | | DISTRICT COURT OF |
| § | | |
| MICHAEL RUSHING, STEPHANIE § | | |
| RUSHING, PENN RUSHING, and § | | |
| FLORENCE RUSHING § | | HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On this date, the Court considered Plaintiffs Texas Gulf Energy, Inc. ("TGE") and CS Bankers V, LLC's ("CS Bankers") Motion for Summary Judgment on Attorney's Fees and for Entry of Final Judgment (the "Motion"). The Court reviewed the Motion, the response, the evidence and heard arguments of counsel and announced its decision in favor of TGE and CS Bankers. With the ruling on the Motion, all matters in controversy, legal and factual, had been determined by the Court.

On August 28, 2014, the Court signed the "CS Bankers' Partial Summary Judgment on Foreclosure."

On October 31, 2014, the Court signed the "Final Summary Judgment" in favor of Third-Party Defendant Lester H. Smith.

On November 14, 2014, the Court signed the "Order Granting Joint Motion for Entry of Supplemental Order" on the issue of foreclosure.

On November 19, 2014, the Court signed the "Final Summary Judgment" in favor of Third-Party Defendants Brian Hendry and Texas Gulf Fabricators, LLC.

On December 17, 2014, the Court signed the "Order Granting Texas Gulf Energy, Inc.'s Partial Summary Judgment on the "Letter of Intent.""

On February 3, 2015, the Court signed the "Order Granting Texas Gulf Energy, Inc,

---

FINAL JUDGMENT

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

977

CS Bankers V, LLC and Timothy J. Connolly's No-Evidence Motions for Summary Judgment."

The aforementioned orders have not been modified, revoked or vacated in whole or in part, and become final with this Final Judgment.

The Court now memorializes its rulings and judgment in favor of Plaintiffs TGE, CS Bankers and Third-Party Defendants Timothy J. Connolly ("Connolly"), Lester H. Smith ("Smith"), Brian Hendry ("Hendry") and Texas Gulf Fabricators, LLC ("TGF") and against Defendants Michael Rushing, Penn Rushing, Florence Rushing and Stephanie Rushing (collectively hereinafter the "Rushings") and Intervenor D&R Constructors, Inc. ("D&R") as set forth in this Final Judgment.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1. that the Rushings and D&R have and take nothing on their claims;

2. that CS Bankers have and recover against and from each of the Rushings and D&R jointly and severally the sum of EIGHTY ONE THOUSAND NINE HUNDRED TWENTY FOUR AND 55/100 DOLLARS ($81,924.55) as reasonable and necessary attorney's fees;

3. that TGE have and recover against and from each of the Rushings and D&R jointly and severally the sum of NINETY FOUR THREE HUNDRED SEVENTY SIX AND 06/100 DOLLARS ($94,376.06) as reasonable and necessary attorney's fees;

4. that TGE and CS Bankers have and recover against and from each of the Rushings and D&R jointly and severally the sum of FIFTY THOUSAND DOLLARS ($50,000.00) in the event of an appeal to the Court of Appeals; for reasonable and necessary attorney's fees for representation through appeal to the Court of Appeals;

5. that TGE and CS Bankers have and recover against and from each of the Rushings and D&R jointly and severally the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) in the event that there is filed a petition for review to the Supreme Court of Texas for reasonable and necessary attorney's fees for representation at the petition for review stage in the Supreme Court of Texas;

6. that TGE and CS Bankers have and recover against and from each of the Rushings and D&R jointly and severally the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) in the event that the petition for review to the Supreme Court of Texas is granted; for reasonable and necessary attorney's fees for representation in the merits briefing stage in the Supreme Court of Texas;

978

7. that TGE and CS Bankers have and recover against and from each of the Rushings and D&R jointly and severally the sum of TEN THOUSAND AND 00/100 DOLLARS ($10,000.00) for reasonable and necessary attorney's fees for representation through oral argument and the completion of proceedings in the Supreme Court of Texas;

8. that all costs of court are taxed against the Rushings and D&R jointly and severally;

9. that all writs and processes necessary for the enforcement or collection of this judgment or the costs of court may issue as are necessary;

10. that any other relief or claim of the Rushings or D&R which is not expressly granted be and hereby is denied; and

11. that this is a final judgment which disposes of all claims and all parties and is appealable.

SIGNED on _April 13,_ , 2015.

_____
PRESIDING JUDGE

AGREED AS TO FORM:

_____
Gary M. Jewell
Adam L. Tepper
CHRISTIAN, SMITH & JEWELL, LLP
2302 Fannin, Suite 500
Houston, Texas 70002
Telephone: (713)659-7617
Facsimile: (713)659-7641

ATTORNEYS FOR TEXAS GULF ENERGY, INC.
CS BANKERS V, LLC AND TIMOTHY J. CONNOLLY

979

# Tab B
## Summary Judgments
## (Fabricators & Hendry)
## 1 CR 593; 2 CR 1967;
## 2 CR 1944–1945

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



CAUSE NO. 2013-00543

| | | |
|---|---|---|
| TEXAS GULF ENERGY, INC. ON BEHALF OF CS BANKERS V, LLC AND TEXAS GULF FABRICATORS, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING, and FLORENCE RUSHING, | § § § § | |
| Defendants. | § | 270TH JUDICIAL DISTRICT |

## PARTIAL SUMMARY JUDGMENT ON FORECLOSURE

After considering CS Bankers V, LLC's Motion for Partial Summary Judgment on the Issue of Foreclosure, Texas Gulf Fabricators, LLC and Brian G. Hendry's Joinder in Plaintiff CS Bankers V, LLC's Motion for Partial Summary Judgment on the Issue of Foreclosure, any response thereto, the pleadings, and the arguments of counsel, the Court **GRANTS** the motions.

It is hereby **ORDERED** that the claims for wrongful foreclosure and quiet title asserted by Defendants Michael Rushing, Stephanie Rushing, Penn Rushing, Florence Rushing, or Intervenor D&R Constructors, Inc., against Third-Party Defendants Texas Gulf Fabricators, LLC and Brian G. Hendry are dismissed with prejudice.

SIGNED on the _____ 28 _____ day of _August_, 2014.

_____
HON. BRENT GAMBLE

593

CAUSE NO. 2013-00543

| | | |
|---|---|---|
| TEXAS GULF ENERGY, INC ON BEHALF OF CS BANKERS V, LLC AND TEXAS GULF FABRICATORS, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING, and FLORENCE RUSHING, | § § § § § | |
| Defendants. | § | 270TH JUDICIAL DISTRICT |

P-1

7A

## FINAL SUMMARY JUDGMENT

After considering Defendants Brian G. Hendry and Texas Gulf Fabricators, LLC's Motion for Final Summary Judgment, any response thereto, the pleadings, the evidence on file, and the arguments of counsel, the Court **GRANTS** the motions.

It is hereby **ORDERED** that all claims asserted by Defendants Michael Rushing, Stephanie Rushing, Penn Rushing, Florence Rushing, or Intervenor D&R Constructors, Inc, against Brian G. Hendry and Texas Gulf Fabricators, LLC are dismissed with prejudice.

SIGNED on the _____19_____ day of _November_, 2014.

_____
HON. BRENT GAMBLE

A/21-1, 23-1

1967

CAUSE NO. 2013-00543

| | |
|---|---|
| TEXAS GULF ENERGY, INC. ON BEHALF § | IN THE 270th JUDICIAL |
| OF CS BANKERS V, LLC AND TEXAS § | |
| GULF FABRICATORS, INC. § | |
| § | |
| *vs.* § | DISTRICT COURT OF |
| § | |
| MICHAEL RUSHING, STEPHANIE § | |
| RUSHING, PENN RUSHING, and § | |
| FLORENCE RUSHING § | HARRIS COUNTY, TEXAS |

## ORDER GRANTING JOINT
## MOTION FOR ENTRY OF SUPPLEMENTAL ORDER

On August 15, 2014, this Court considered CS Bankers V, LLC's ("CS Bankers") Motion for Summary Judgment on the Issue of Foreclosure, Third-Party Defendants Texas Gulf Fabricators, LLC ("TGF") and Brian Hendry's ("Hendry") Joinder in Plaintiff CS Bankers V, LLC's Motion for Partial Summary Judgment on the Issue of Foreclosure, the response, the objections, the replies, the pleadings, the affidavits and other evidence on file.

On August 28, 2014, this Court entered an Order Granting CS Bankers' Motion for Summary Judgment and TGF and Hendry's Joinder in the same.

On September 23, 2014, CS Bankers and TGF/Hendry filed their Joint Motion for Entry of Supplemental Order (the "Motion").

After considering the Motion, the response, and arguments of counsel, if any, the Court GRANTS the Motion. As such, as a supplement to the August 28, 2014 Order, it is further

ORDERED, ADJUDGED AND DECREED that CS Bankers' foreclosure on the subject property located on Wade Rd., Baytown, Texas 77521 (the "Property") was proper, valid and complied with the terms of the Deed of Trust and the laws of the State of Texas. It is further

ORDERED, ADJUDGED AND DECREED that CS Bankers held legal title to the Property subsequent to the proper and lawful foreclosure. It is further

---

**ORDER GRANTING JOINT MOTION**
**FOR ENTRY OF SUPPLEMENTAL ORDER**                                    PAGE 1 OF 2

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1944

ORDERED, ADJUDGED AND DECREED that D&R Constructors, Inc. and Michael Rushing, Penn Rushing, Stephanie Rushing and Florence Rushing's claim of wrongful foreclosure is dismissed with prejudice.

SIGNED on November 14, 2014.

_____
PRESIDING JUDGE

1945

# Tab C
## Summary Judgment (Smith)
## 2 CR 1580

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



CAUSE NO. 2013-00543

| | | |
|---|---|---|
| TEXAS GULF ENERGY, INC. ON | § | IN THE DISTRICT COURT OF |
| BEHALF OF CS BANKERS V, LLC | § | |
| AND TEXAS GULF FABRICATORS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MICHAEL RUSHING, STEPHANIE | § | |
| RUSHING, PENN RUSHING, and | § | |
| FLORENCE RUSHING, | § | |
| | § | |
| Defendants. | § | 270TH JUDICIAL DISTRICT |

## FINAL SUMMARY JUDGMENT

After considering Defendant Lester H. Smith's Motion for Final Summary Judgment, any response thereto, the pleadings, the evidence on file, and the arguments of counsel, the Court **GRANTS** the motion.

It is hereby **ORDERED** that all claims asserted by Defendants Michael Rushing, Stephanie Rushing, Penn Rushing, Florence Rushing, or Intervenor D&R Constructors, Inc., against Lester H. Smith are dismissed with prejudice.

SIGNED on the ___31___ day of _____,2014.

_____
HON. BRENT GAMBLE

1580

# Tab D
## Sanctions Order
## 2 CR 2025–2026

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

10/10/2014 12:02:12 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 2791663
By: PRINCE, SASHAGAYE S

CAUSE NO. 2013-00543

| | | |
|---|---|---|
| TEXAS GULF ENERGY, INC. ON BEHALF OF CS BANKERS V, LLC AND TEXAS GULF FABRICATORS, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING, and FLORENCE RUSHING, | § § § § | |
| Defendants. | § § | 270TH JUDICIAL DISTRICT |

## ORDER ASSESSING SANCTIONS

After considering Third-Party Defendant Lester H. Smith's Motion for Sanctions, any response thereto, the pleadings, the evidence, and the arguments of counsel, the Court **GRANTS** the motion.

The Court **FINDS** good cause to impose sanctions on Defendants Michael Rushing, Stephanie Rushing, Penn Rushing, Florence Rushing, Intervenor D&R Constructors, Inc., and George W. Gore.

The Court **FURTHER FINDS** that Defendants and Intervenor brought groundless claims against Lester H. Smith, and that those claims were brought in bad faith or for the purpose of harassment.

The Court **FURTHER FINDS** that Defendants' and Intervenor's attorney, George W. Gore, failed to conduct a reasonable inquiry into the facts before filing claims against Lester H. Smith.

2025

The Court **FURTHER FINDS** that Defendants, Intervenor, and George W. Gore acted in bad faith by filing Defendants' and Intervenor's Third Amended Claims after being put on notice by the depositions of Penn Rushing and Michael Rushing that the claims asserted against Lester H. Smith were groundless.

Based on these findings, the Court hereby **ORDERS** Defendants Michael Rushing, Stephanie Rushing, Penn Rushing, Florence Rushing, Intervenor D&R Constructors, Inc., and their attorney, George W. Gore, to jointly and severally pay Lester H. Smith $ _33,250.00_ as a sanction. The full amount must be paid within 30 days of the signing of this order.

SIGNED on the ___3___ day of _Febuary_, 2015.

FEB - 3 2015

_____
HON. BRENT GAMBLE

2

2026

# Tab E
## Note
## 1 CR 407–410

*2657982*

# REAL ESTATE LIEN NOTE

$625,000.00              Harris County, Texas              _Oct 28_, 2004

  For Value Received, **D & R CONSTRUCTORS, INC.**, as principal ("Maker" whether one or more), promises to pay to the order of **STERLING BANK**, in the City of Houston, Harris County, Texas, the sum of **SIX HUNDRED TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($625,000.00)**, in legal and lawful money of the United States of America, with interest thereon from the date hereof until maturity on the principal balance (calculated upon the basis of a 360 day year and for the actual number of days elapsed) equal to the "Note Rate", being a per annum interest rate which is equal to one and one fourth percent (1.25%) above the prime rate as reported in the Money Rates section of the Southwest Edition of the Wall Street Journal (or if such rate is not available, a comparable interest rate index selected by the Holder), as it changes, from time to time (but not to exceed the maximum rate allowed by law). However, the Note Rate will not exceed seven and three fourths percent (7.75%). Any increase or decrease in the Note Rate resulting from a change in the "prime rate" shall be effective immediately when such change becomes effective, without notice to the Maker, unless Applicable Law requires that such increase or decrease not be effective until a later time, in which event such increase or decrease shall be effective at the earliest time permitted under the provisions of such law. "Applicable Law" means the law in effect from time to time and applicable to this Note which lawfully permits the charging and collection of the highest permissible lawful, non-usurious rate of interest on this Note, including laws of the State of Texas and laws of the United States of America. Said principal and interest being payable in lawful money of the United States of America, at P.O. Box 40333, Houston, Harris County, Texas 77240-0333 as follows:

    Upon demand and until demand, this Note shall be payable in monthly installments of principal including interest, all of such installments except for the last, being in the amount of **FIVE THOUSAND THREE HUNDRED THREE AND 04/100 DOLLARS ($5,303.04)** each, the first such installment being due and payable one (1) month after the date hereof, and each subsequent installment shall be due and payable on the same day of each succeeding calendar month thereafter until five (5) years from the date hereof, when the then remaining unpaid balance of principal of this Note, plus accrued interest, shall mature and finally become due and payable.

    Annually, the Payee may adjust the monthly principal and interest payment based on the then outstanding principal balance of the Note and based upon the original fifteen (15) year amortization.

It is expressly provided that upon default in the punctual payment of this Note or any part thereof, principal or interest, as the same shall become due and payable, the entire indebtedness secured by the hereinafter

Initial for Identification

_W.P.R._

W.P.R.
C:\Sterling\D&R-nt.wpd           Page 1 of 4

EXHIBIT A-1

mentioned lien shall be matured, at the option of the Holder; and in the event default is made in the prompt payment of this Note when due or declared due, and the same is placed in the hands of an attorney for collection, or suit is brought on same, or the same is collected through Probate, Bankruptcy or other judicial proceedings, then the Maker agrees and promises to pay ten percent (10%) additional on the amount of principal and interest then owing, as attorney's fees.

The Maker hereof reserves the right to prepay this Note in any amount at any time prior to maturity without penalty.

It is the intention of the parties hereto to comply with the Usury Laws of the State of Texas; accordingly, it is agreed that, notwithstanding any provisions to the contrary in this Note, or in any of the documents securing payment hereof or otherwise relating hereto, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by law. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in this Note or in any of the documents securing payment hereof or otherwise relating hereto, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither the Maker hereof nor his heirs, legal representatives, successors, or assigns, or any other party liable for the payment hereof, shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount permitted by law (c) any such excess which may have been collected shall be, at the Holder's option, either applied as a credit against the then unpaid principal amount hereof or refunded to Maker, and (d) the effective rate of interest shall be automatically subject to the reduction to the maximum lawful contract rate allowed under the Usury Laws of the State of Texas as now or hereafter construed by the Courts having jurisdiction.

If the Holder of this Note at any time deems the Maker, or the indebtedness, or the security for the indebtedness unsafe or insecure, then upon the happening of any of the said contingencies the Holder may declare the unpaid balance due and payable without notice to any party.

Any check, draft, money order, or other instrument given in payment of all or any portion hereof may be accepted by the Holder hereof and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Holder except to the extent that actual cash proceeds of such instrument are unconditionally received by the Holder and applied to this indebtedness in the manner elsewhere herein provided.

Each Maker, surety and endorser of this Note expressly waives all notices, demands for payment, presentations for payment, notices of intention to accelerate the maturity, protest and notice of protest, as to this Note and as to each, every and all installments hereof.

Initial for Identification

*W.P.R.*

W.P.R.
C:\Sterling\D&R-nt.wpd

Page 2 of 4

EXHIBIT A-1

To the maximum extent not prohibited by applicable law, this Note is additionally secured by all deeds of trust, security agreements, assignments and other writings of every kind and nature heretofore, or hereafter executed by any of the Makers or any other person to secure any indebtedness of any of the Makers which is now or hereafter owing to any holder of this Note, whether or not any of such writings describe, cover, pertain, or affect any property, rights of interest which are similar or dissimilar to any of the following described property rights or interests, and whether or not such writings were originally executed or delivered to or for the benefit of any holder of this Note or executed or delivered to or for the benefit of any other person and acquired by purchase or otherwise by any holder of this Note, and whether or not any such lien or security interest or other interest was created by any then owner of any interest in or to any of the property, rights or interests which are described in or covered by any such writing or to which any such writing may pertain or affect, including, but not limited to, the following:

1) a Deed of Trust Lien to **JAMES W. GOOLSBY, JR.**, Trustee, covering all of the property described therein, including, but not limited to, the following described property, to wit:

A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas.

2) an Absolute Assignment of Rents executed by Maker on even date herein;

3) a UCC Financing Statement;

4) a Continuing Guaranty Agreement executed on even date herein by William Penn Rushing, individually; and

5) a Continuing Guaranty Agreement executed on even date herein by Charles Leon Rushing, individually.

Each of the Makers of this Note further hereby agree and consent to all of the terms, provisions, agreements, covenants and warranties set forth or contained in all of the deeds of trust, security agreements, assignments and other writings now or hereafter securing or pertaining to the loan evidenced by this Note and agrees that all of the writings now or hereafter securing or pertaining to the loan evidenced by this Note (and all terms, provisions, agreements, covenants, and warranties contained in such writings) shall be binding in all respects on each of the Makers of this Note (whether or not any of the Makers have executed such writings) and on the heirs, successors, legal representatives and assigns of each of the Makers of this Note.

The Holder shall be entitled, as further security for the payment of the Note, to a security interest in any securities of Maker held by Holder or in any money found on deposit with the Holder to the credit of

Initial for Identification

*W.P.R.*

W.P.R.
C:\Sterling\D&R-nt.wpd                                   Page 3 of 4

EXHIBIT A-1

the Maker, and may retain and apply said money, securities or proceeds of such collections to the payment of this Note and indebtedness.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE BANK IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THIS LOAN. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN REFINANCING FROM STERLING BANK.

The Borrower and Lender, hereinafter the Parties, have entered into a loan transaction on even date herein. In conjunction with the transaction the Parties have executed one or more promissory notes, assignments, security agreements, guaranty agreements, mortgages, deeds of trust or other documents. It is the intention of the Parties that this Disclaimer be incorporated by reference into each of the documents so executed for this transaction.

The Parties warrant and represent that the entire agreement between the Parties is contained within the executed documents, as amended and supplemented hereby, and that there exists no oral nor other unwritten agreements or promises between the Parties that are not reflected in the language of the various documents executed in conjunction with this transaction.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE
FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT
BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS,
OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL
AGREEMENTS BETWEEN THE PARTIES.

D & R CONSTRUCTORS, INC.

By: _____
WILLIAM PENN RUSHING, President

EXHIBIT A-1

2657982



## MODIFICATION, RENEWAL AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS          §
                                     §

COUNTY OF HARRIS          §

WHEREAS, **D & R Constructors, Inc.**, whose mailing address is 6314 Wade, Baytown, Texas 77521 (referred to as "Maker" and also as "Grantor", whether one or more), is legally obligated to pay the unpaid principal balance of that certain Promissory Note (the "Promissory Note") dated **October 28, 2004** in the original principal amount of **SIX HUNDRED TWENTY-FIVE THOUSAND and NO/100 DOLLARS ($625,000.00)**, payable to the order of **Sterling Bank** ("Payee"),15000 Northwest Freeway, Houston, Harris County, Texas 77040 and as more fully described in and secured by the liens evidenced by the following:

    (a)    Deed of Trust recorded under Harris County Clerk's file no. **Y032366** against the land and improvements described in Exhibit "A" attached hereto and Absolute Assignment of Rents with License Back; and

    (b)    Guaranties: **William Penn Rushing and Charles Leon Rushing** ("Guarantor" and/or "Guarantors");

the Promissory Note being secured by the liens therein created or mentioned against the property described therein or herein (the "Property"). Maker and Grantor hereby expressly acknowledge, renew, extend and recognize the validity of the liens (said liens and security interests being hereinafter collectively referred to as the "Liens") against the Property and agree that the Property secures the indebtedness evidenced hereby;

WHEREAS, Maker, Grantor and Guarantor desire to modify and renew the Promissory Note and to extend and carry forward all of the aforementioned Liens on the Property, together with all other liens and security interest securing the payment of the Promissory Note;

WHEREAS, Payee, the legal owner and holder of the Promissory Note and the Liens, in consideration of these premises and at the request of Maker and Grantor has agreed to modify, renew and/or extend the Promissory Note (the Promissory Note, as hereinafter modified, renewed and/or extended, being also referred to as the "Note") as hereinafter provided;

NOW, THEREFORE, in consideration of the modification and renewal of the Note as hereinafter set forth, the Maker hereby renews the Note and promises to pay to the order of the Payee

G:\JDH\3010-299 D&R Constructors, Inc\MOD.wpd

EXHIBIT A-1

at its banking house in the City of Houston, Harris County, Texas, in lawful money of the United States of America, the outstanding principal amount of the Note, together with interest on the unpaid principal balance thereof at the Prime Rate (floating) **plus one and three quarters of one percent (1.75%)**, which shall be adjusted daily to the rate in effect, however the Stated Rate (as defined herein) shall never be less than **five and one-quarter of one percent (5.25%)**. The term "Prime Rate", as used herein, shall mean the prime rate as published in The Wall Street Journal's "Money Rates" table. If multiple prime rates are quoted in the table, then the average of such rates will be the Prime Rate. In the event that the prime rate is no longer published in the "Money Rates" table, then Payee will choose a substitute Prime Rate which is based upon comparable information; provided, however, that the rate of interest shall never exceed the maximum permitted by law. Any change in interest rate resulting from a change in the Prime Rate shall be effective at the beginning of the business day on which such change in the Prime Rate becomes effective. The rate in effect is herein referred to as the "Stated Rate"; provided, however, in no event shall interest on this Note ever be charged or paid at a rate greater than the maximum non-usurious rate permitted by applicable federal or Texas law from time to time in effect, whichever shall permit the higher lawful rate. Interest shall be computed on the basis of the actual number of days elapsed in a year composed of 360 days; however, if such computation would cause the Stated Rate to exceed the Highest Lawful Rate, interest shall be computed on the basis of a year composed of 365 or 366 days, as the case may be. At all such times, if any, as Texas law shall establish the Highest Lawful Rate, the Highest Lawful Rate shall be the "indicated rate ceiling" (as defined in V.T.C.A., Finance Code, Chapter 303, as amended) from time to time in effect; provided that Payee may also rely on alternative maximum rates of interest from time to time in effect under other applicable laws, if they are higher. In addition there shall no longer be a prohibition from the applicable interest rate exceeding **seven and three quarters of one percent (7.75%)**.

**Modification of Promissory Note.**

Monthly installments of principal and interest in the amount of **$5,416.81** (or such other amounts as may be required on account of the adjustment of the interest rate as set forth herein) the first such installment being due and payable **November 28, 2009**, and each subsequent installment shall be due and payable on the same day of each succeeding calendar month thereafter until **October 28, 2011**, when the then remaining unpaid principal and accrued unpaid interest of this Note is due and payable. Interest will be calculated on the unpaid principal to the date of each installment. Each payment will be credited first to the accrued unpaid interest and then to reduction of principal.

Whenever any payment to be made under the Note shall be stated to be due on a Saturday, Sunday or legal holiday for commercial banks under the laws of the State of Texas, then such payment shall be made on the next succeeding business day.

In addition to all principal and accrued interest on the Note, Maker agrees to pay (a) all reasonable costs and expenses incurred by all owners and holders of the Note in collecting the Note through probate, reorganization, bankruptcy or any other proceeding, (b) the reasonable attorneys'

EXHIBIT A-1

fees when and if the Note is placed in the hands of an attorney for collection after default, and (c) the reasonable attorneys' fees, costs and expenses incurred by Payee in connection with the preparation and filing of the agreements and documents contemplated herein.

Unless as otherwise provided by law, Maker and any and all co-makers, endorsers, guarantors and sureties severally waive notice (including, but not limited to, notice of protest, notice of dishonor and notice of intent to accelerate and notice of acceleration), demand, presentment for payment, protest and the filing of suit for the purpose of fixing liability and consent that the time of payment hereof may be extended and re-extended from time to time without notice to them or any of them, and each agrees that his, her or its liability on or with respect to the Note shall not be affected by any release of or change in any security at any time existing or by any failure to perfect or to maintain perfection of any lien on or security interest in any such security.

Maker warrants and represents to Payee, and to all other owners and holders of any indebtedness evidenced hereby, that the loan evidenced by the Note is and shall be solely for business, commercial or agricultural purposes and not primarily for personal, family or household use. Maker acknowledges that the loan evidenced by the Note is specifically exempted under Section 226.3(a) of Regulation Z issued by the Board of Governors of the Federal Reserve System and under the Truth-in-Lending Act and that no disclosures are required to be given under such regulations and federal laws in connection with the Note.

It is agreed that time is of the essence of this agreement and that in the event of default in the payment of any installment when due, the holder of the Note may declare the unpaid principal balance plus all accrued but unpaid interest due thereon immediately due and payable without notice, and failure to exercise said option shall not constitute a waiver on the part of the holder of the right to exercise the same at any other time.

This Note shall be governed by and construed in accordance with Texas law and applicable federal law. The parties hereto intend to conform strictly to the applicable laws governing maximum interest rates permitted. In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Payee hereunder or otherwise exceed the maximum amount permitted under applicable law. If from any circumstance whatsoever interest would otherwise be payable to Payee in excess of the maximum lawful amount, the interest payable to Payee shall be reduced automatically to the maximum amount permitted by applicable law. If Payee shall ever receive anything of value deemed interest under applicable law which would, apart from this provision, be in excess of the maximum lawful amount, an amount equal to the amount which would have been excessive interest shall be applied to the reduction of scheduled principal payments owing hereunder in inverse order of their maturities and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Payee shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest charged or paid on account of such indebtedness does not exceed the maximum permitted by applicable law. The provisions of this

EXHIBIT A-1

paragraph shall control all existing and future agreements between Maker and Payee. In determining whether interest of any kind paid or payable hereunder exceeds the highest rate, the undersigned and Payee shall, to the maximum extent permitted under applicable law (a) characterize any non-principal payment as an expense, fee or premium, (b) exclude voluntary prepayments and the effects thereof and (c) amortize, prorate, allocate and spread, in equal parts, the total amount of interest throughout the entire contemplated term of the indebtedness in order to render the interest rate uniform throughout such term. Without limiting the generality of the foregoing, the amount of any prepayment premium or penalty and the amount of any late payment fee or charge provided for herein or in any documents securing or related to the indebtedness evidenced hereby (whether or not the same are construed as interest under applicable laws) are limited to and shall never exceed an amount which, when added to all items called or deemed to be interest in connection with the transactions contemplated herein, does not exceed the maximum amount of interest payable on the principal balances involved under applicable law. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

In addition to and without limitation of any defenses to which Payee may be entitled under applicable law, Maker and any obligor agree to provide Payee with written notice and a reasonable opportunity of at least 60 days to correct any excessive contract, charge or receipt, and any corrective action by Payee shall relieve Payee of any liability regarding same. Any such notice to Payee must be by certified mail, return receipt requested, and must provide Payee with specific details regarding the nature and extent of any alleged excessive contract, charge or receipt.

Maker and Grantor hereby extends the Liens to secure the payment of the Note, until the same has been fully paid and agrees that the modification, renewal, and extension of the Promissory Note shall in no manner affect or impair the Note or the Liens securing the same and that the Liens shall not in any manner be waived, except as otherwise expressly provided herein, the purpose of this instrument being simply to modify and renew the Promissory Note and to carry forward or extend the Liens, which are acknowledged by Maker and Grantor to be valid and subsisting, and the Maker and Grantor further agree that all terms and provisions of the Promissory Note and of the instrument or instruments creating or fixing the Liens securing the same shall be and remain in full force and effect as therein written except as otherwise expressly provided herein.

None of the rights, titles, liens, interests, securities or equities existing or to exist under any documents or instruments securing the indebtedness evidenced hereby, in law or in equity, are or shall be in anyway released, diminished, impaired or affected hereby. Any and all Liens are recognized to be still in full force and effect insofar as to cover all of the properties described therein and all rights and liens existing and to exist under any documents or instruments securing the indebtedness evidenced hereby and any other document securing the note or creating a lien, as modified hereby, are renewed, extended, carried forward and conveyed by Maker and Grantor to secure any and all indebtedness of Maker and Grantor to Payee.

Grantor expressly covenants, represents and warrants that Grantor is the owner and holder

EXHIBIT A-1

of good and valid title to all of the Property, free and clear of all liens and encumbrances other than those existing unto and in favor of Payee; that all costs, expenses, and taxes due and owing to date against or with respect to any and all of the Property have been paid to date and that Grantor has the absolute, unrestricted right and authority to mortgage, assign and convey all of the Property and any proceeds resulting therefrom to Payee.

If Maker defaults in the payment of this note, or in the performance of any obligation in any instrument securing or collateral to it, then Payee may declare the unpaid principal balance and accrued unpaid interest on this note immediately due. Default in the terms of any note, deed of trust or security agreement pertaining to such indebtedness described above and herein, shall be an event of default and will give Payee the right to accelerate payment of all said indebtedness (unpaid principal, earned unpaid interest and other accrued charges) and to invoke all of its rights under the terms of the note, deed of trust, and security agreement described herein. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, dishonor, notice of protest and notice of dishonor, to the extent permitted by law.

For purposes of any suit relating to the Note, Maker hereof submits itself to the jurisdiction of any court sitting in the State of Texas and further agrees that venue in any suit arising out of the Note or any venue shall be fixed in Harris County, Texas. Final judgment in any suit shall be conclusive and may be enforced in any jurisdiction within or without the United States of America, by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of such liability.

The Note has been executed and delivered in and shall be construed in accordance with and governed by the laws of the State of Texas and of the United States of America, except that Chapter 346 of the Texas Finance Code, which regulates certain revolving loan accounts and revolving tri-party accounts shall not apply to this Note and all loans or any advances hereunder, shall not be governed by or subject to the provisions of Chapter 346 in any manner whatsoever.

Maker and any Guarantors hereby waive, acquit, discharge and forever release Payee, and its agents, servants, employees, representatives and attorneys and all person, natural or corporate, in privity with them or any of them, from any and all claims and causes of action, of whatever kind and nature, known or unknown, now or heretofore existing, and further waives and releases any and all credits, defenses, claims for offsets and all defenses to Maker's and/or any Guarantors' liability for the unpaid balance of the debt herein stipulated to be due and owing or arising under or out of the Note and/or any guaranty, including without limitation, failure of consideration, breach of warranty, misrepresentation, deceptive trade practices, usury, fraud, unlawful collection practices, tortuous interference and bad faith, which have accrued before the date of this Agreement or thereafter, known or unknown.

Each Maker and guarantor of this Note further hereby agrees and consents to all of the terms, provisions, agreements, covenants and warranties set forth or contained in all of the deeds of trust,

EXHIBIT A-1

security agreements, assignments and other writings now or hereafter securing or pertaining to the loan evidenced by this Note and agrees that all of the writings now or hereafter securing or pertaining to the loan evidenced by this Note (and all terms, provisions, agreements, covenants and warranties contained in such writings) shall be binding in all respects on the Maker of this Note (whether or not any Maker has executed such writings) and on the heirs, successors, legal representatives and assigns of each of the Maker of this Note.

As additional security for this note, Maker grants to Payee an express lien and security interest in and to all property and any and all deposits (general or special, time or demand, provisional or final) at any time held by Payee for the credit of or for the account of Maker. If this note is not paid at maturity, however, such maturity may be brought about, or if a default should occur and be continuing under any document or instrument executed by Maker or any other party as security for the payment of this note, Payee is hereby authorized at any time, and from time to time, without notice to Maker (any such notice being hereby expressly waived by Maker), to block transfers or withdraws of any funds from and/or not pay drafts or checks on, any and all accounts, deposit or otherwise, and/or to set off and apply any and all such deposits at or for the credit or the account of Maker against the outstanding principal balance of and accrued interest on, this note. The foregoing rights of Payee are in addition to and cumulative of all other rights and remedies (including, without limitation, other liens, security interests and rights of set off) which Payee may have.
The Maker agrees that the sums evidenced by this Note are not for personal, family or household purposes, and that it is to be used primarily for business and commercial purposes.

It shall be a default hereunder if Payee deems itself insecure as to the repayment of the indebtedness secured hereby or the adequacy and sufficiency of the property as security for the indebtedness secured hereby.

It shall be a default hereunder if Payee discovers that any statement, representation or warranty in the Note, any security agreement or in any other document or instrument delivered to or relied upon by Payee in connection with the indebtedness secured hereby is false, misleading or erroneous in any respect.

Payee may, upon the death of a guarantor or upon a guarantor who is an employee of Maker no longer being employed by Maker, whether by resignation, termination or otherwise, declare the unpaid principal balance and earned unpaid interest on this Note immediately due and Payee may avail itself of all rights, powers, and recourses allowed or permitted herein and/or by law.

If there shall be any transfer of ownership interests in Maker and/or in management of Maker, without Payee's prior written consent, Payee may declare the unpaid principal balance and earned unpaid interest on this Note immediately due and Payee may avail itself of all rights, powers, and recourses allowed or permitted herein and/or by law.

Maker, at any time and from time to time, shall furnish promptly, upon request, a written statement or affidavit, in such form as may be required by Payee, stating the unpaid balance of the

EXHIBIT A-1

Note and that there are no offsets or defenses against full payment of the Note and performance of the terms hereof, or if there are any such offsets and defenses, specifying them in reasonable detail.

The Note is given in modification, renewal and extension of the Promissory Note and the Liens securing the payment thereof are not extinguished, but are specifically carried forward, ratified in all respects and shall secure the payment hereof. Maker and Grantor warrant to the Holder of the Note and Liens that the Note and the Liens, as modified, are valid and enforceable and represents that they are not subject to rights of offset, rescission, or other claims.

THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

THE PARTIES TO THIS AGREEMENT HEREBY, UNCONDITIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT.

Maker from time to time, at the request of Payee, will, (i) promptly correct any defect, error or omission which may be discovered in the contents of any document relating to this transaction, ("Loan Documents") or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver and record and/or file such further documents or instruments (including, without limitation, further mortgages, security agreements, financing statements, continuation statements, assignments of rents or leases and environmental indemnity agreements) and perform such further acts and provide such further assurances as may be necessary, desirable or proper, in Payee's opinion, to carry out more effectively the purposes of any Loan Documents and such other instruments subject to the liens and security interests hereof and thereof any property intended by the terms hereof or thereof to be covered hereby or thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property; provided that such documents or instruments do not materially increase Maker's liability under the Loan Documents; and (iii) execute, acknowledge, deliver, procure, and file and/or record any document or instrument (including specifically, but without limitation, any financing statement) deemed advisable by Payee to protect the liens and the security interests herein granted against the rights or interests of third persons; provided that such documents or instruments do not materially increase Maker's liability under the Loan Documents. Maker will pay reasonable costs connected with any of the foregoing.

The Maker and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note, in whole or in part, understands and agrees that (i) Payee's document retention policy may involve the imaging of executed loan documents, which includes but is not limited to any note, guaranty, deed of trust, security agreement, assignment, financing statement and any other document which evidences any indebtedness owed by Maker to Payee and/or secures such

EXHIBIT A-1

indebtedness and/or relates to the indebtedness and/or the collateral securing such indebtedness and the destruction of the paper original, including the original note and (ii) the Maker and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note, in whole or in part, waive any rights and/or defenses that it may have to the use of such imaged copies of loan documents in the enforcement of any of Payee's rights in a court of law or otherwise and/or as to any claim that such imaged copies of the loan documents are not originals.

LATE CHARGE. If a payment is ten (10) days or more late, Borrower will be charged five percent (5.00%) of the regularly scheduled payment.

Payee reserves the right, in its sole discretion, without notice to the Maker, to sell participations or assign its interest, or both, in all or any part of this note.

Maker agrees that the advanced and unpaid principal amount on the Promissory Note, as hereby modified, renewed and extended, is $503,025.30 as of October 28, 2009.

The Guarantor(s) by their execution hereof, hereby agree to the terms hereof.

**EXECUTED IN DUPLICATE ORIGINAL COUNTERPARTS,** this _15th_ day of _March_, 2010 and effective October 28, 2009.

MAKER and GRANTOR

D & R Constructors, Inc.

By _____
William Penn Rushing, President

STATE OF TEXAS      §
                    §
COUNTY OF HARRIS    §

This instrument was acknowledged before me on the _15th_ day of _March_, 2010 by William Penn Rushing, President of D & R Constructors, Inc.

_____
Notary Public, in and for the State of Texas

M. ISABEL VILLAGOMEZ
Notary Public, State of Texas
My Commission Expires 02-02-2013

EXHIBIT A-1

Sterling Bank

By: _Larry J Leewright_
Name: _LARRY J LEEWRIGHT_
Title: _Senior Vice President_

STATE OF TEXAS            §
                          §
COUNTY OF HARRIS          §

This instrument was acknowledged before me on the 15th day of _March_, 2010 by _Larry J. Leewright, Sr. V.P._ of Sterling Bank.

M. ISABEL VILLAGOMEZ
Notary Public, State of Texas
My Commission Expires 02-02-2013

_M. Isabel Villagomez_
Notary Public, in and for the State of Texas

EXHIBIT A-1

EXHIBIT "A"

A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, page(s) 60, Map Records of Harris County, Texas being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas.

# Tab F
## Deed of Trust
## 1 CR 421–438

RETURN TO:
COMMERCE TITLE
700 ROLLINGBROOK SUITE B
BAYTOWN, TEXAS 77521
134812



4032366

11/02/04        $48.00

2006844 25

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**DEED OF TRUST (WITH SECURITY AGREEMENT, ASSIGNMENT OF RENTS, AND FINANCING STATEMENT)**

THE STATE OF TEXAS        §
                          §          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS          §

THAT the Undersigned, **D & R CONSTRUCTORS, INC.**, whose address is 6314 Wade, Baytown, Texas 77521, (hereinafter called "Grantors", whether one or more), for and in consideration of the indebtedness hereinafter described, have GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents to GRANT, BARGAIN, SELL and CONVEY, IN TRUST, unto **JAMES W. GOOLSBY, JR.**, as Trustee, and all substitute trustees hereunder (all of whom are hereinafter called "Trustee"), and unto his or their successors and assigns, forever, all and singular the property hereinafter described, situated in the County of Harris and the State of Texas, to-wit:

> A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas;

together with (a) all rights, title, interests, estates, reversions and remainders owned and to be owned by Grantors in and to the above described premises and in and to the properties covered hereby and all lands owned or to be owned by Grantors next or adjacent to any land herein described or herein mentioned; (b) all buildings and improvements now or hereafter located on the lands described or mentioned; (c) all rights, titles and interests now owned or hereafter acquired by Grantors in and to all easements, streets and rights-of-way of every kind and nature adjoining the said lands, and all public or private utility connections thereto, and all appurtenances, servitudes, rights, ways, privileges and prescriptions thereunto; (d) the escrowed sums described in paragraph (5) hereof, all goods, equipment, fixtures, inventory, machinery, furniture, furnishings and other personal property that is now owned or hereafter acquired by Grantors and now or hereafter affixed to, or located on, the above described real estate and used or usable for any present or future operation of any building or buildings now or hereafter located on said lands, including without limitation, all rights, titles and interests of Grantors in and to any such personal property that may be subject to any title retention or security agreement superior in lien or security interest to the lien or security interest of this Deed

C:\Sterling\D&R-dt.wpd                    Page 1 of 18



EXHIBIT A-2

of Trust; (e) all permits, licenses, franchises, certificates, utility commitments and/or reservations, wastewater capacity reservations and other rights and privileges obtained in connection with the property described herein; (f) all rights, titles and interests of Grantors in and to all timber to be cut, or crops to be harvested, from the real estate covered hereby and all minerals in, under, and upon, produced and to be produced from said real estate; and without limitation of the foregoing, any and all rights, rents, revenues, benefits, leases, contracts, accounts, general intangibles, money, instruments, documents, tenements, hereditaments and appurtenances now or hereafter owned by Grantors and appertaining to, generated from, arising out of or belonging to the above-described properties or any part thereof (all of the aforesaid being hereinafter sometimes called the "Mortgaged Property").

The Land, the Improvements, the Accessories, and all other property rights and proceeds set forth above are collectively referred to as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Trustee and his assigns, forever, and Grantors do hereby bind Grantors, their respective heirs, legal representatives, successors and assigns, to warrant and forever defend the Mortgaged Property unto Trustee, his successors and assigns, forever, against the claim or claims of all persons whomsoever claiming or to claim the same, or any part thereof.

This conveyance is made in trust, however, to secure and enforce (a) the payment of one (1) certain promissory note(s) (hereinafter sometimes called "Note", whether one or more) of even date herewith in the original principal amount of **SIX HUNDRED TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($625,000.00)** executed by Grantors payable to the order of **STERLING BANK** (hereinafter called "Beneficiary"), whose address is P.O. Box 40333, Houston, Harris County, Texas 77240-0333, bearing interest at the rate therein stated, with final maturity being **FIVE YEARS FROM THE DATE HEREOF**, such Note providing in part, that if certain defaults occur, the unpaid principal thereof and all accrued unpaid interest may be declared due and payable, at the holder's option, prior to the stated maturity thereof, and providing further for the payment of attorney's fees and other expenses of collection under certain circumstances, and (b) the performance of all covenants and agreements of Grantors herein.

This Deed of Trust, Security Agreement and Assignment of Rents (herein called "Deed of Trust") shall secure, in addition to the Note, all funds hereafter advanced by Beneficiary to or for the benefit of Grantors, as contemplated by any covenant or provision herein contained or for any other purpose, whatever kind or character, owing or which may hereafter become owing by Grantors to Beneficiary, it being contemplated that Grantors may hereafter become indebted to Beneficiary in further sum or sums (all of the aforesaid, including all amounts payable under the Note, being hereinafter sometimes called "the Indebtedness"). Said indebtedness shall be payable at the above stated address of Beneficiary or at such other place as Beneficiary may hereafter direct in writing; and, unless otherwise provided herein or in the instrument evidencing the Indebtedness, shall bear interest at the same rate per annum as the Note bears, from date of accrual of the Indebtedness until paid. In addition, any and all attorney's fees and expenses of collection payable under the terms of the Note shall be and constitute a part of the Indebtedness secured hereby. This Deed of Trust shall also secure all renewals, rearrangements, extensions and enlargements of any of the Indebtedness.

C:\Sterling\D&R-dt.wpd

EXHIBIT A-2

FOR TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Grantors have GRANTED, BARGAINED, SOLD, ASSIGNED and CONVEYED, and by these presents do GRANT, BARGAIN, SELL, ASSIGN and CONVEY absolutely unto Beneficiary, any and all rents, revenues, income, proceeds, profits, security and other benefits paid or payable by parties for the use, lease, license, operation or other enjoyment of the Mortgaged Property (herein collectively called "Rents"), subject only to the hereinafter described license, TO HAVE AND TO HOLD unto Beneficiary forever, and Grantors do hereby bind Grantors, their respective heirs, legal representatives, successors and assigns to warrant and forever defend the title to the Rents unto Beneficiary against every person whomsoever lawfully claiming or to claim the same, or any part thereof. Grantors represent and warrant that Grantors have not previously assigned or pledged, and will not hereafter assign or pledge, all or any portion of the Rents. Beneficiary hereby grants Grantors a limited license to exercise and enjoy all incidences of ownership of the Rents, including without limitation the right to collect, demand, sue for, attach, levy, recover and receive the Rents. Grantors hereby agree to receive all Rents and hold the same as a trust fund to be applied first to the payment of the Note, second to the payment of all taxes, insurance premiums, utility expenses of the Mortgaged Property, as same become due, and finally, Grantors may use the balance of the Rents collected in any manner not inconsistent with this Deed of Trust. So long as the license is in effect, Grantors (a) shall comply with their obligations under all leases of all or portions of the Mortgaged Property, (b) shall maintain each of such leases in full force and effect during the term thereof, (c) shall, upon Beneficiary's request, deliver to each tenant under such leases a notice of this assignment of Rents in a form acceptable to Beneficiary, (d) shall deliver Beneficiary true and correct copies of such leases, and (e) shall not anticipate or collect any Rents more than thirty (30) days in advance of the time when the same become due under the terms of the leases.

Upon the occurrence of a default under this Deed of Trust, which continues after the expiration of the applicable curative or grace period (if any), the hereinabove described license shall immediately terminate without any action being required of Beneficiary, and any and all tenants are hereby authorized by Grantors, upon written notice to such tenants by Beneficiary, to make future payments of Rents to Beneficiary without further consent of Grantors. Thereafter, Beneficiary shall have the exclusive right, power and authority to collect the Rents, regardless of whether a foreclosure sale of the remainder of the Mortgaged Property has occurred under this Deed of Trust, or whether Beneficiary has taken possession of the remainder of the Mortgaged Property or attempted to do any of the same.

Neither the acceptance by Beneficiary of this assignment of Rents, nor the granting of any other right, power, privilege or authority herein concerning the Rents, nor the exercise of any of the aforesaid, shall (a) prior to the actual taking of physical possession and operational control of the Mortgaged Property by Beneficiary, be deemed to constitute Beneficiary as a "mortgagee in possession", or (b) at any time thereafter, obligate Beneficiary (i) to appear in or defend any action or proceeding relating to the Rents or the remainder of the Mortgaged Property, (ii) to take any action hereunder, (iii) to expend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any lease, (iv) to assume any obligation or responsibility for any deposits which are not physically delivered to Beneficiary, or (v) for any injury or damage to person or property sustained in or about the Mortgaged Property.

EXHIBIT A-2

Upon the payment in full of the Indebtedness secured by this Deed of Trust, Beneficiary agrees to re-assign the Rents to Grantors.

In order to better secure payment of the Indebtedness, and to secure performance of Grantors' covenants and agreements set forth herein, Grantors do hereby jointly and severally covenant and agree with Beneficiary and with Trustee and represent and warrant to Beneficiary and Trustee as follows:

1. <u>Payment of Indebtedness</u>. Grantors shall pay all of the Indebtedness, together with the interest and other appurtenant charges thereon, when the same shall become due, in accordance with the terms of the Note and all other instruments evidencing the Indebtedness or evidencing any renewals, rearrangements, extensions or enlargements of the same, or any part thereof.

2. <u>Title of Grantors; Legal Existence; Compliance with Laws</u>. Grantors represent and warrant that they have good and indefeasible title in fee simple to the above described land and the improvements thereon, that the Mortgaged Property is free from encumbrance superior to the liens and security interests hereby created, unless otherwise herein provided, and that Grantors have full right and authority to make this conveyance. Grantors agree to maintain and preserve their legal existence and all related rights, franchises and privileges. Grantors shall at all times comply with and perform all obligations under any applicable laws, statutes, regulations or ordinances relating to the Mortgaged Property and Grantors' use and operation thereof, to the Grantors' knowledge. The Mortgaged Property has never been used as a toxic or hazardous waste or substance disposal site, nor are any toxic or hazardous wastes or substances disposed of, stored on, or contained in the Mortgaged Property in any way which could subject Grantors, Beneficiary, or any subsequent lienholder of the Mortgaged Property to liability or damages under any applicable laws pertaining to health or the environment. Grantors will defend, at their own cost and expense, indemnify and hold Beneficiary harmless from and against, any action, proceeding, claim, liability or damages arising from, in connection with, or in any way affecting or related to, the Mortgaged Property or any breach, default or noncompliance with any legal requirement (including, without limitation, any applicable laws pertaining to health or the environment), and all costs and expenses incurred by Beneficiary in protecting its interest hereunder or defending itself in such an event (including all court costs and attorneys' fees) shall be borne by Grantors.

3. <u>Insurance</u>. Grantors shall keep all buildings and other property covered by this Deed of Trust insured against fire and lightning with extended coverage and against such other risks as Beneficiary may require, all in amounts approved by Beneficiary not exceeding 100% of the full insurable value, such insurance to be written in form and with companies approved by Beneficiary, with loss made payable to Beneficiary pursuant to the Texas Standard Mortgagee Clause, without contribution, and shall deliver the policies of insurance to Beneficiary promptly as issued. Such policies shall provide, by way of riders, endorsements or otherwise, that the insurance provided thereby shall not be terminated, reduced or otherwise limited regardless of any breach of the representations and agreements set forth therein, and that no such policy shall be cancelled, endorsed or amended to any extent unless the issuer thereof shall have first given Beneficiary at least thirty (30) days' prior written notice. If Grantors fail to furnish such policies, Beneficiary, at its option, may procure such insurance at Grantors' expense. All renewal and substitute policies of insurance

C:\Scrflag\DAR-dt.wpd

EXHIBIT A-2

shall be delivered to Beneficiary, premiums paid, at least ten (10) days before termination of the insurance protection replaced by such renewal or substituted policies. In case of loss, Beneficiary, at its option, shall be entitled to receive and retain the proceeds of the insurance policies, applying the same toward payment of the Indebtedness as Beneficiary shall see fit, or at Beneficiary's option, Beneficiary may pay the same over wholly or in part to Grantors for the repair of said building or buildings or for the erection of a new building or buildings in their place, or for any other purposes satisfactory to Beneficiary, but Beneficiary shall not be obligated to see to the proper application of any amount paid over to Grantors. If Beneficiary elects to allow payment of all or part of such proceeds to Grantors, such payments shall be disbursed on such terms and subject to such conditions as Beneficiary may specify. Grantors agree that regardless of whether any insurance proceeds payable to them are sufficient to pay the costs of repair and restoration of the Mortgaged Property, they shall promptly commence and carry out the repair, replacement, restoration and rebuilding of any and all of the Mortgaged Property damaged or destroyed by fire or other casualty so as to return same, to the extent practicable, to its condition immediately prior to such damage to or destruction thereof. Grantors shall not permit or carry on any activities within or relating to the Mortgaged Property that are prohibited by the terms of any insurance policy covering any part of the Mortgaged Property or which permit cancellation of, or any increase in, the premium payable for any insurance policy covering any part of the Mortgaged Property. In the event of a foreclosure of this Deed of Trust, the purchaser of the Mortgaged Property shall succeed to all of the rights of Grantors, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Beneficiary pursuant to the provisions of this Deed of Trust. Regardless of the types or amounts of insurance required and approved by Beneficiary, Grantors shall assign and deliver to, and do hereby assign to, Beneficiary all policies of insurance that insure against any loss or damage to the Mortgaged Property, as collateral and further security for the payment of the Indebtedness. Grantors shall also obtain and maintain in force and effect such liability and other insurance policies and protection as Beneficiary may from time to time specify.

4. <u>Taxes and Assessments.</u> Grantors shall pay all taxes and assessments against the Mortgaged Property, including, without limitation, all taxes in lieu of ad valorem taxes, as the same become due and payable. Grantors shall provide Beneficiary with copies of paid tax receipts or other satisfactory evidence showing that all taxes and assessments against the Mortgaged Property have been paid in full at least fifteen (15) days prior to the date such taxes or other assessments are delinquent. At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens, or security interests created hereby, or upon the Note, or any part thereof, Grantors shall immediately pay all such taxes; provided, that, if it is unlawful for Grantors to pay such taxes, Grantors shall prepay the Note in full without penalty within sixty (60) days after demand therefor by Beneficiary.

5. <u>Assignment of Condemnation Proceeds.</u> Immediately upon their obtaining knowledge of the institution or threatened institution of any proceeding for the condemnation of the Mortgaged Property or any portion thereof, Grantors shall notify Beneficiary of such fact. All judgments, decrees and awards or payment for injury or damage to the Mortgaged Property, and all awards pursuant to proceedings for condemnation thereof, including interest thereon, are hereby assigned in their entirety to Beneficiary, who shall apply the same first to reimbursement of all costs and expenses incurred by Beneficiary in connection with such condemnation proceeding and the

EXHIBIT A-2

balance shall be applied to the Indebtedness in such manner as it may elect; and Beneficiary is hereby authorized, in the name of Grantors, to execute and deliver valid acquittances for, and to appeal from, any such award, judgment or decree. If Beneficiary elects to allow a portion of the proceeds of any condemnation proceeding to be paid to Grantors for use in rebuilding, restoring or repairing the Mortgaged Property, then the disbursement of such proceeds shall be on such terms and subject to such conditions as Beneficiary may specify. Grantors shall promptly notify Beneficiary of the institution or threatened institution of any proceeding for the condemnation of any of the Mortgaged Property. Beneficiary shall have the right to participate in any such condemnation proceeding.

6. Defense of Title. If, while this trust is in force, the title of Trustee to the Mortgaged Property, or any part thereof, shall be endangered or shall be attacked directly or indirectly, Grantors hereby authorize Beneficiary, at Grantors' expense, to take all necessary and proper steps for the defense of said title, including the employment of counsel, the prosecution or defense of litigation, and the compromise or discharge of claims made against said title.

7. Costs and Expenses. All reasonable costs and expenses incurred in performing and complying with Grantors' covenants set forth herein shall be borne solely by Grantors. If Grantors shall fail, refuse or neglect to make any payment or perform any act required herein, then at any time thereafter, and without notice to or demand upon Grantors and without waiving or releasing any other right, remedy or recourse Beneficiary may have because of same, Beneficiary may (but shall not be obligated to) make such payment or perform such act for the account of and at the expense of Grantors, and shall have the right to rent the Mortgaged Property for such purpose and to take all such actions and expend such sums thereon and with respect to the Mortgaged Property as it may deem necessary or appropriate. Grantors shall pay or reimburse Beneficiary against any and all such expenses and costs. To the extent not prohibited by applicable law, Grantors will pay all costs and expenses and reimburse Beneficiary for any and all expenditures of every character incurred or expended from time to time, regardless of whether or not a default shall have occurred hereunder, in connection with Beneficiary's evaluating, monitoring, administering and protecting the Mortgaged Property, and creating, perfecting and realizing upon Beneficiary's security interest in and liens on the Mortgaged Property, including, without limitation, all appraisal fees, consulting fees, filing fees, taxes, brokerage fees and commissions, fees incident to security interest, lien and other title searches and reports, escrow fees, attorneys' fees, legal expenses, court costs, auctioneer fees and expenses, other fees and expenses incurred in connection with the liquidation or sale of the Mortgaged Property and all other professional fees. Any amount to be paid hereunder by Grantors to Beneficiary, to the extent not prohibited by applicable law, shall be payable upon demand and shall bear interest from the date of expenditure until paid at the lesser of (i) the rate of interest provided in the Note for past due installments of principal and/or interest, or (ii) the maximum non-usurious rate of interest from time to time permitted by applicable law ("Highest Lawful Rate"). To the extent that Chapter 303 of the Texas Finance Code and/or Articles 1D.002 and 1D.003 of the Texas Credit Title Code are applicable to the Indebtedness, the "weekly ceiling" specified in such article is the applicable ceiling; provided that, if any applicable law permits greater interest, the law permitting greater interest shall apply. Grantors shall indemnify Beneficiary for any expenses incurred by Beneficiary pursuant to this paragraph, and shall indemnify Beneficiary against all losses, expenses, damage, claims and causes of action, incurred or accruing by reason of any acts performed by Beneficiary pursuant to the provisions of this paragraph. To the extent not prohibited by applicable law, the sum of all such

EXHIBIT A-2

costs and expenses incurred by Beneficiary pursuant to this paragraph and not reimbursed by Grantors shall be added to the Indebtedness and thereafter shall form a part of the same; and it shall be secured by this Deed of Trust and by subrogation to all of the rights of the person, corporation or body politic receiving such payment.

8. <u>Maintenance of Property; No Other Liens or Security Interests.</u> Grantors shall keep every part of the Mortgaged Property in first-class condition and presenting a first-class appearance, make promptly all repairs, renewals and replacements necessary to such end, prevent waste to any part of the Mortgaged Property, and do promptly all else necessary to such end; and Grantors shall discharge all claims for labor performed and material furnished therefor, and shall not suffer any lien of mechanics or materialmen therefor to attach to any part of the Mortgaged Property. Grantors shall guard every part of the Mortgaged Property from removal, destruction and damage, and shall not do or suffer to be done any act whereby the value of any part of the Mortgaged Property may be lessened. No building or other property now or hereafter covered by the lien of this Deed of Trust shall be removed, demolished or materially altered or enlarged, nor shall any new building be constructed, without the prior written consent of Beneficiary. Grantors shall not initiate, join in, or consent to any change in any private restrictive covenants, zoning ordinances or other public or private restrictions limiting or defining the uses that may be made of the Mortgaged Property or any part thereof without the prior written consent of Beneficiary. Beneficiary and its agents or representatives shall have access to the Mortgaged Property at all reasonable times in order to inspect same and verify Grantors' compliance with their duties and obligations under this Deed of Trust. Grantors shall not, without the prior written consent of Beneficiary, grant, convey or otherwise create or permit to be created, any type of mortgage, lien, security interest or other encumbrance on any of the Mortgaged Property, regardless of whether the same shall be inferior and subordinate to the liens and security interests of Beneficiary in and to the Mortgaged Property.

9. <u>Restrictions on Transfer.</u> Upon a sale or transfer (including a lease for a term of longer than one year), without Beneficiary's prior written consent, of (i) all or any part of the Mortgaged Property, or any interest (beneficial or otherwise) therein, or (ii) actual or beneficial interests in Grantors (if Grantors are not natural persons but are corporations, partnerships, trusts or other legal entities), Beneficiary (pursuant to Paragraph 11 hereof), at Beneficiary's option, and without demand, presentment for payment, notice of nonpayment, grace, protest, notice of protest, notice of intent to accelerate the indebtedness, notice of acceleration of the indebtedness, or any other notice, all of which are expressly waived by Grantors, may declare the entire unpaid principal balance and accrued interest on the Note and any other unpaid indebtedness secured hereby immediately due and payable, and Beneficiary may invoke any of its remedies hereunder. Grantors agree that Beneficiary may condition its consent to any such sale or transfer on (a) execution by the transferee of a written assumption agreement containing such terms as Beneficiary may require, (b) an increase in the rate of interest payable under the Note, and/or (c) the payment to Beneficiary of a reasonable transfer fee.

10. <u>Grantors' Successors in Interest.</u> In the event the ownership of the Mortgaged Property or any part thereof becomes vested in a person other than Grantors, Beneficiary may, without notice to Grantors, deal with such successor or successors in interest with reference to this Deed of Trust and to the Indebtedness in the same manner as with Grantors, without in any way

EXHIBIT A-2

vitiating or discharging Grantors' liability hereunder or upon the Indebtedness or waiving the provisions of Paragraph 9 hereof. No sale of the Mortgaged Property and no forbearance on the part of Beneficiary, and no extension of the time for the payment of the Indebtedness given by Beneficiary, shall operate to release, discharge, modify, change or affect, either in whole or in part, any original liability of Grantors, or the liability of the guarantors or sureties of Grantors, or of any other party liable for the payment of the Indebtedness or any part thereof.

11. <u>Default and Acceleration.</u> In the event Grantors shall default in the prompt payment, when due, of the Indebtedness, or any part thereof, or fail to keep and perform any of the covenants or agreements contained herein or in any other document securing the payment of the Indebtedness, or, in the event Grantors or any person liable for the Indebtedness, or any part thereof, files a voluntary petition in bankruptcy or for corporate reorganization, makes an assignment for the benefit of any creditor, or if the Mortgaged Property or any property owned by a person liable for the Indebtedness is placed under control or in the custody of any court or receiver, or if Grantors abandon any of the Mortgaged Property, then, in any such event, Beneficiary, at Beneficiary's option, and without demand, presentment for payment, notice of nonpayment, grace, protest, notice of protest, notice of intent to accelerate the Indebtedness, notice of acceleration of the Indebtedness, or any other notice, all of which are hereby expressly waived by Grantors, may declare the entire unpaid balance and accrued interest on the Note and any other unpaid Indebtedness immediately due and payable, whereupon it shall be so due and payable.

12. <u>Prepayment.</u> If, following the occurrence of an event of default hereunder and an acceleration of the Indebtedness or any potion thereof, but prior to a foreclosure sale of the Mortgaged Property, Grantors shall tender to Beneficiary payment of an amount sufficient to satisfy the entire amount of the Note, such tender shall be deemed to be a voluntary prepayment under the Note and accordingly, Grantors shall also pay to Beneficiary the premium (if any) then required under the Note in order to exercise the prepayment privilege contained therein.

13. <u>Survival of Covenants and Liens.</u> All of the covenants and agreements of Grantors set forth herein shall survive the execution and delivery of this Deed of Trust and shall continue in force until the Indebtedness is paid in full. Accordingly, if Grantors shall perform faithfully each and all of the covenants and agreements herein contained, then, and then only, this conveyance shall become null and void and shall be released in due form, upon Grantors' written request and at Grantors' expense; otherwise, it shall remain in full force and effect. No release of this conveyance or the lien thereof shall be valid unless executed by Beneficiary.

14. <u>Foreclosure and Sale.</u> If an event of default hereunder shall occur, Beneficiary may, at Beneficiary's election and by or through Trustee or otherwise, sell or offer for sale, in one or more sales, all or any part of the Mortgaged Property, in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash (or credit on the indebtedness if Beneficiary is the highest bidder) at public auction. Such sale shall be made at the courthouse door of the County wherein the Mortgaged Property (or any of that portion thereof to be sold) is located, on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m. after giving legally adequate written notice of sale of that portion of the Mortgaged Property to be sold, at least twenty-one (21) consecutive days prior to the date of said sale:

EXHIBIT A-2

   a. by posting at the courthouse door of each county in which the Mortgaged Property (or the portion thereof to be sold) is located, a written notice designating the county in which the Mortgaged Property will be sold;

   b. by filing in the office of the county clerk of each county in which the Mortgaged Property (or the portion thereof to be sold) is located, a copy of the notice posted under subparagraph (1); and

   c. by serving written notice of the sale by certified mail on each debtor who, according to the records of Beneficiary, is obligated to pay the Note (and, in the event the proceeds of the foreclosure sale are to be applied to a portion of the indebtedness other than or in addition to the Note, then to each debtor who, according to the records of Beneficiary, is obligated to pay such portion of the indebtedness), such service to be complete and effective when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of Beneficiary.

In the alternative, such notice and sale may be accomplished in such manner as permitted or required by Title 5, §51.002 of the Texas Property Code relating to the sale of real property under contract lien and/or by Chapter 9 of the Texas Business and Commerce Code relating to the sale of collateral after default by a debtor (as said title and chapter now exist or may be hereafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. In instances where the Mortgaged Property is located in states other than Texas, such sales shall be made in accordance with the legal requirements therefor for such state, including, to the extent there relevant, the Uniform Commercial Code there in effect. Nothing contained in this Paragraph 14 shall be construed to limit in any way Trustee's rights to sell the Mortgaged Property by private sale if, and to the extent that, such private sale is permitted under the laws of the state where the Mortgaged Property (or that portion thereof to be sold) is located, or by public or private sale after entry of a judgment by any court of competent jurisdiction ordering same. At any such sale (i) whether made under the power herein contained, the aforesaid Title 5, §51.002 of the Texas Property Code, the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Mortgaged Property (Grantors hereby covenanting and agreeing to deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale, (ii) each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Grantors, (iii) each and every recital contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Note (and/or other portion of the Indebtedness with respect to which the sale has been conducted), advertisement and conduct of such sale in the manner provided herein and otherwise by law, and appointment of any successor Trustee hereunder, (iv) any and all prerequisites to the validity thereof shall be conclusively presumed to have been performed, (v) the receipt of Trustee or of such other party or officer making the sale shall be a sufficient discharge to the purchaser or purchasers for his or their purchase money and no such purchaser or purchasers, or his

EXHIBIT A-2

or their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or non-application thereof, (vi) to the fullest extent permitted by law, Grantors shall be completely and irrevocably divested of all of their right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar both at law and in equity against Grantors, and against any and all other persons claiming or to claim the property sold or any part thereof, by, through or under Grantors and (vii) to the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale. The Mortgaged Property may be sold in one or more parcels and in such manner and order as Trustee, in his sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any event of default shall not be exhausted by any one or more sales. The Trustee making such sale shall receive the proceeds thereof and shall apply the same as follows: (i) he shall pay the reasonable expense of executing this trust, including a reasonable commission to himself; (ii) after paying such expenses, he shall pay, so far as may be possible, the Indebtedness (including the Note), discharging first the portion of the Indebtedness arising under the covenants or agreements herein contained and not evidenced by the Note; (iii) he shall pay the residue, if any, to Grantors, their respective heirs, legal representatives, successors or assigns.

15. Substitute Trustee. If the herein named Trustee shall die or become disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by Beneficiary so to do, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee to act instead of the herein named Trustee, Beneficiary shall have full power to appoint, at any time by written instrument, a substitute trustee, and, if necessary, several substitute trustees in succession, who shall succeed to all the estate, rights, powers and duties of Trustee named herein, and no notice of such appointment need to be given to Grantors or to any other person or filed for record in any public office. Such appointment may be executed by any authorized agent of Beneficiary; and if Beneficiary be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Grantors, severally, hereby ratify and confirm any and all acts that the Trustee, or his successor or successors in this trust, shall lawfully do by virtue hereof.

16. Purchaser's Right to Disaffirm. The purchaser at any trustee's or foreclosure sale hereunder may disaffirm any easement granted, or rental or lease contract made, in violation of any provision of this Deed of Trust, and may take immediate possession of the Mortgaged Property free from, and despite the terms of, such grant of easement and rental or lease contract.

17. Beneficiary as Purchaser. Beneficiary may bid and being the highest bidder therefor, become the purchaser of any and all Mortgaged Property offered for sale at any trustee's or foreclosure sale hereunder and shall have the right to credit the amount of the bid upon the amount of the Indebtedness owing to Beneficiary, in lieu of cash payment.

18. Recovery of Unmatured Indebtedness. It is agreed that if default be made in the payment of any installment of the Note or other Indebtedness secured by this Deed of Trust, or in the observance or performance of any covenant or agreement of Grantors contained or referred to

EXHIBIT A-2

herein, the holder of the Indebtedness or any part thereof under which such default occurs shall have the option to proceed with foreclosure in satisfaction of such default either through the courts or by directing Trustee or his successors in trust to proceed as if under a full foreclosure, conducting the sale as herein provided, and without declaring the whole Indebtedness due, and provided that if a sale is made because of default of an installment, or a part of an installment, such sale may be made subject to the unmatured part of the Note or other Indebtedness secured by this Deed of Trust; and it is agreed that such sale, if so made, shall not in any manner affect the unmatured portion of the Indebtedness, but as to such unmatured portion of the Indebtedness, this Deed of Trust shall remain in full force and effect just as though no sale had been made under the provisions of this paragraph. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any unmatured portion of the Indebtedness, it being the intention of the parties hereto to provide for a foreclosure and sale of the security for any matured portion of the Indebtedness without exhausting the power to foreclose and to sell the security for any other portion of the Indebtedness whether matured at the time or subsequently maturing. It is agreed that an assignee holding any installment or part of any installment of the Note or other indebtedness secured hereby shall have the same powers as are hereby conferred on the holder of the Indebtedness to proceed with foreclosure on a matured installment or installments, and also to request Trustee or his successors in trust to sell the Mortgaged Property or any part thereof; but if an assignee forecloses or causes a sale to be made to satisfy any installment, part of an installment, or installments, then the purchaser at such foreclosure or sale shall be made subject to all of the terms and provisions hereof with respect to the unmatured part of the Note and other indebtedness secured hereby owned by the then holder of such indebtedness.

19.   **Rights of Beneficiary Upon Default.** In the event of default by Grantors in the performance of one or more of their covenants and agreements as set forth herein, then Beneficiary may, at its option, enter upon and take exclusive possession of the Mortgaged Property and thereafter manage, use, lease and otherwise operate same in such manner and by and through such persons, objects or employees as it may deem proper and necessary. Beneficiary shall be likewise entitled to possession of all books and records of Grantors that relate to the Mortgaged Property. The rights of Beneficiary under this paragraph may be enforced through an action for forcible entry and detainer or any other means authorized by law. Any and all rents or other issues or profits received by Beneficiary shall be accounted for in the manner provided for in the opening provisions of this Deed of Trust. Grantors hereby indemnify and hold Beneficiary harmless from and against any and all liability, loss, cost, damage or expense which Beneficiary may incur under or by reason of this paragraph or for any action taken by Beneficiary hereunder.

20.   **Election to Discontinue Remedy.** In the event Beneficiary shall elect to invoke any of the rights or remedies provided for herein, but shall thereafter determine to withdraw or discontinue same for any reason, it shall have the unqualified right to do so, whereupon all parties shall be automatically restored and returned to their respective positions regarding the Indebtedness and this Deed of Trust as shall have existed prior to the invocation of Beneficiary's rights hereunder, and the rights, powers and remedies of Beneficiary hereunder shall be and remain in full force and effect.

EXHIBIT A-2

21. <u>Release or Renewal of Liens</u>. Any part of the Mortgaged Property may be released by Beneficiary without affecting the lien, security interest and rights hereof against the remainder. The lien, security interest and rights hereby granted shall not affect or be affected by any other security taken for the Indebtedness or any part thereof. The taking of additional security, or the extension or renewal of the Indebtedness or any part thereof, shall at no time release or impair the lien, security interest and rights granted hereby, or affect the liability of any endorser, guarantor or surety, or improve the right of any junior lienholder; and this Deed of Trust, as well as any instrument given to secure any renewal or extension of the Indebtedness, or any part thereof, shall be and remain a first and prior lien and security interest on all of the Mortgaged Property not expressly released, until the Indebtedness is completely paid.

22. <u>Maximum Interest</u> The invalidity, or unenforceability in particular circumstances, of any provisions of this Deed of Trust shall not extend beyond such provision in such circumstances and no other provision of this Deed of Trust shall be affected thereby. It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provisions to the contrary in the Note or any instrument evidencing the Indebtedness, or in this Deed of Trust or any of the documents or instruments securing payment of the Indebtedness or otherwise relating thereto, in no event shall the Note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such laws. If any such excess interest is contracted for, charged or received, under the Note or any instrument evidencing the Indebtedness, or under this Deed of Trust or under the terms of any of the other documents securing payment of the Indebtedness or otherwise relating thereto, or in the event the maturity of any of the Indebtedness is accelerated in whole or in part, or in the event that all or part of the principal or interest of the Indebtedness shall be prepaid, so that under any of such circumstances, the amount of interest contracted for, charged or received under the Note or any instruments evidencing the Indebtedness, or under this Deed of Trust or under any of the instruments securing payment of the Indebtedness or otherwise relating thereto, shall exceed the maximum amount of interest permitted by the applicable usury laws, then in any such event (a) the provisions of this paragraph shall govern and control, (b) neither Grantors nor any other person or entity now or hereafter liable for the payment of the Note or any instrument evidencing the Indebtedness shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by the applicable usury laws, (c) any such excess that may have been collected shall be either applied as a credit against the then unpaid principal amount of the Indebtedness or refunded to Grantors, at the holder' option, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under the Note, or any instrument evidencing the Indebtedness, or under this Deed of Trust or under such other documents that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by the applicable usury laws, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the loans evidenced by the Note or the instruments evidencing the Indebtedness, all interest at any time contracted for, charged or received from Grantors or otherwise by the holder or holders hereof in connection with such loans.

EXHIBIT A-2

23.     Waiver of Marshalling and Certain Rights. To the extent that Grantors may lawfully do so, Grantors hereby expressly waive any right pertaining to the marshalling of assets, the administration of estates of decedents, or other matters to defeat, reduce or affect (a) the right of Beneficiary to sell all or any part of the Mortgaged Property for the collection of the Indebtedness (without any prior or different resort for collection), or (b) the right of Beneficiary to the payment of the Indebtedness out of the proceeds of the sale of all or any part of the Mortgaged Property in preference to every other person and claimant.

24.     Waivers. It is expressly agreed that (i) no waiver of any default on the part of Grantors or breach of any of the provisions of this Deed of Trust shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time; (ii) any failure by Beneficiary to insist upon the strict performance by Grantors of any of the terms and provisions herein shall not be deemed to be a waiver of any of the terms and provisions herein, and Beneficiary, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Grantors of any and all of the terms and provisions of this Deed of Trust; (iii) neither Grantors nor any other person now or hereafter obligated for the payment of the whole or any part of the Indebtedness shall be relieved of such obligations by reason of the failure of Beneficiary or Trustee to comply with any request of Grantors, or of any other person so obligated, to take action to foreclose this Deed of Trust or otherwise enforce any of the provisions of this Deed of Trust or of any obligations secured by this Deed of Trust, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the Indebtedness, or by reason of the subordination in whole or in part by Beneficiary of the lien, security interest or rights evidenced hereby, or by reason of any agreement or stipulation with any subsequent owner or owners of the Mortgaged Property extending the time of payment or modifying the terms of the Indebtedness or this Deed of Trust without first having obtained the consent of Grantors or such other person, and, in the latter event, Grantors and all such other persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by Beneficiary; (iv) regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien or security interest on the Mortgaged Property, Beneficiary may release the obligation of anyone at any time liable for any of the Indebtedness or any part of the security held for the Indebtedness and may extend the time of payment or otherwise modify the terms of the Indebtedness and/or this Deed of Trust without, as to the security or the remainder thereof, in anywise impairing or affecting the lien or security interest of this Deed of Trust or the priority of such lien or security interest, as security for the payment of the Indebtedness as it may be so extended or modified over any subordinate lien or security interest; (v) the holder of any subordinate lien or security interest shall have no right, and shall not be granted the right, to terminate any lease affecting the Mortgaged Property whether or not such lease be subordinate to this Deed of Trust; and (vi) Beneficiary may resort for the payment of the Indebtedness to any security therefor held by Beneficiary in such order and manner as Beneficiary may elect.

EXHIBIT A-2

25. <u>Terminable Tenancy Upon Foreclosure</u>. In the event of a Trustee's sale hereunder, and, if at the time of such sale, Grantors, or any other party occupies the Mortgaged Property so sold, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either tenant or landlord, at a reasonable rental per day based upon the value of the portion of the Mortgaged Property so occupied, such rental to be due and payable daily to the purchaser. An action of forcible detainer and/or any other legal proceedings shall lie if the tenant holds over after a demand in writing for possession of said property.

26. <u>Application of Payments on Indebtedness</u>. In the event any portion of the Indebtedness is not, for any reason whatsoever, secured by this Deed of Trust on the Mortgaged Property, the full amount of all payments made on the Indebtedness shall first be applied to such unsecured portion of the Indebtedness until the same has been fully paid.

27. <u>Appointment of Receiver</u>. It is agreed that Beneficiary, in any action to foreclose, shall be entitled to the appointment of a receiver of the rents and profits of the Mortgaged Property as a matter of right and without notice, with power to collect the rents, issues and profits of the Mortgaged Property due and coming due during the pendency of such foreclosure suit, without regard to the value of the Mortgaged Property or the solvency of any person or person liable for the payment of the Indebtedness involved in said suit. Grantors, for themselves and any subsequent owner or owners, hereby waive any and all defenses to the application for a receiver as above provided, and hereby specifically consent to such appointment without notice; but nothing herein contained is to be construed to deprive Beneficiary of any other right, remedy or privilege it may now have under the law to have a receiver appointed. The provision for the appointment of a receiver of the rents and profits is made an express condition upon which the loan evidenced by the Note is made.

28. <u>Subrogation</u>. To the extent that proceeds of the Note are used to pay any prior indebtedness secured by an outstanding lien, security interest, charge or prior encumbrance against the Mortgaged Property, such proceeds have been advanced by Beneficiary at Grantors' request; and Beneficiary shall be subrogated to any and all rights, powers, equities, liens and security interests owned or granted by any owner or holder of such prior indebtedness, irrespective of whether said security interests, liens charges or encumbrances are released of record.

29. <u>Hazardous Materials</u>. With respect to "Hazardous Materials or Substances" (defined below) in, on, under or about the Mortgaged Property:

        a. Grantors shall [a] comply strictly and in all respects with any and all federal, state or local rule or regulation pertaining to any substance or material currently identified to be toxic or hazardous, including, but not limited to, asbestos, radon, pcb, radioactive substance, methane, volatile hydrocarbons, industrial solvents or any other material or substance which has in the past or could at any time in the future cause or constitute a health, safety or environmental hazard to any person or property (collectively hereinafter referred to as "Environmental Laws"), [b] notify the Beneficiary promptly in the event of any defined spill, discharge, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solids, liquid or gaseous products, or hazardous

C:\Studia\DAR-dt.wpd

EXHIBIT A-2

waste (collectively hereinafter referred to as a "Spill") upon the Mortgaged Property, and [c] promptly forward to the Beneficiary a copy of any order, notice, permit, application or any other communication or report in connection with any such Spill or any other matter relating to the Environmental Laws as they may affect the Mortgaged Property.

b. Promptly upon the written request of the Beneficiary, Grantors, at their expense, shall provide the Beneficiary with an environmental site assessment or environmental audit report or any update of any of the foregoing, with respect to the Mortgaged Property, all in form and content satisfactory to the Beneficiary.

c. Grantors shall indemnify the Beneficiary and hold the Beneficiary harmless from and against any loss, liability, damage or expense, including attorneys' fees, suffered or incurred by the Beneficiary, whether as assignee pursuant to the Assignment of Rents or as successor in interest in any way to the Grantors as owner, lessor or lessee of the Mortgaged Property by virtue of foreclosure under the Security Documents or acceptance of the Mortgaged Property in lieu of foreclosure [a] under or on account of the Environmental Laws, including the assertion of any lien thereunder; [b] with respect to any Spill or hazardous substance affecting the Mortgaged Property, whether or not the same originates or emanates from such Mortgaged Property or any contiguous real estate, including any loss of value of such Mortgaged Property as a result of a Spill or hazardous substance; and [c] with respect to any other matter affecting such Mortgaged Property within the jurisdiction of any federal, state or municipal official administering the Environmental Laws.

d. In the event of any Spill of hazardous substance affecting any premises owned or occupied by Grantors, whether or not the same originates or emanates from the Mortgaged Property or any contiguous real estate, and/or if Grantors shall fail to comply with any of the requirements of the Environmental Laws, Beneficiary may, but shall not be obligated to, give such notices or cause such work to be performed or take any and all actions deemed necessary or desirable to remedy such Spill or hazardous substance or cure such failure to comply and amounts paid by the Beneficiary as a result thereof shall be immediately due and payable by Grantor and, until paid, shall bear interest at the interest rate defined in the Note.

e. The Mortgaged Property shall, at all times during Grantors' ownership, tenancy or occupation, be free of contamination from any substance or material currently identified to be toxic or hazardous pursuant to any of the Environmental Laws. Grantors have not caused or suffered to occur any Spill or hazardous substance at, under or within the Mortgaged Property. Grantors are not nor shall be involved in operations which could lead to the imposition of any liability or lien on any such person under the Environmental Laws nor have Grantors permitted any tenant or occupant of such premises to engage in any such activity.

f. "Hazardous Materials and Substances" shall mean [a] any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 et seq.), as amended from time to time, and regulations promulgated thereunder; [b] any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 "(42 U.S.C. Section 9601 et seq.) ("CERCLA"), as amended from time to time, and regulations promulgated thereunder; [c] asbestos; [d] polychlorinated biphenyls; [e] underground

EXHIBIT A-2

storage tanks, whether empty, filled or partially filled with any substance, [f] any substance the presence of which on the Mortgaged Property is prohibited by any Environmental Laws; and [g] any other substance which by any Environmental Laws requires special handling or notification of any federal, state or local governmental entity in its collection, storage, treatment or disposal.

30. Security Agreement.

a. Security Interest. This Deed of Trust shall be a security agreement between Grantors, as the debtor, and Beneficiary as the secured party, covering the Mortgaged Property constituting personal property or fixtures governed by the Texas Uniform Commercial Code (the "Code"), and Grantors grant to Beneficiary a security interest in such portion of the Mortgaged Property. In addition to Beneficiary's other rights hereunder, Beneficiary shall have all rights of a secured party under the Code. Grantors shall execute and deliver to Beneficiary all financing statements that may be required by Beneficiary to establish and maintain the validity and priority of Beneficiary's security interest, and Grantors shall bear all costs thereof, including all state and county UCC record searches reasonably required by Beneficiary. If Beneficiary should dispose of any of the Mortgaged Property pursuant to the Code, ten (10) days' written notice by Beneficiary to Grantors shall be deemed to be reasonable notice; provided, however, Beneficiary may dispose of such property in accordance with the foreclosure procedures of this Deed of Trust in lieu of proceeding under the Code. Beneficiary and Grantors agree that a carbon, photographic or other reproduction of this Deed of Trust is sufficient as a financing statement.

b. Notice of Changes. Grantors shall give advance notice in writing to Beneficiary of any proposed change in Grantors' name, identity, or structure, and shall execute and deliver to Beneficiary, prior to or concurrently with the occurrence of any such change, all additional financing statements that Beneficiary may require to establish and maintain the validity and priority of Beneficiary's security interest with respect to any of the Mortgaged Property described or referred to herein.

c. Fixtures. Some of the items of the Mortgaged Property described herein are goods that are or are to become fixtures related to the land described herein, and it is intended that, as to those goods, this Deed of Trust shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of the county in which the Mortgaged Property is situated. Information concerning the security interest created by this Deed of Trust may be obtained from Beneficiary, as secured party, at the address of Beneficiary stated above. The mailing address of the Grantors, as debtor, is as stated above.

31. Income and Expense Statements. Grantors shall, upon request of Beneficiary, deliver to Beneficiary, within sixty (60) days after the end of each fiscal year of Grantors the then current financial statements of Grantors.

32. Beneficiary's Consent. In any instance hereunder where Beneficiary's prior approval or consent is required to be obtained by Grantors, or Beneficiary's judgment is required to be exercised as to any matter, the granting or denial of such approval or consent and the exercise of such judgment shall be within the sole discretion of Beneficiary, and Beneficiary shall not, for any reason

EXHIBIT A-2

and to any extent, be required to grant such approval or consent or exercise such judgment in any particular manner regardless of the reasonableness of either the request or Beneficiary's judgment.

33. <u>Notices</u>. All notices or other communications required or permitted to be given pursuant to this Deed of Trust shall be in writing and shall be considered as properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, or (ii) delivered in person to the address of the intended addressee, or (iii) by prepaid telegram. Notice by mail shall be effective upon the expiration of three (3) business days after its deposit in the United States mail, except as otherwise set forth in Paragraph (14) above when notice is effective upon deposit in the United States mail. Notice given in any other manner shall be effective only if and when received at the address of the addressee. For purposes of notice, the addresses of the parties shall be as set forth in the opening recitals hereinabove; provided, however, that either party shall have the right to change its address for notice hereunder to any other location within the United States by the giving of thirty (30) days' notice to the other party in the manner set forth hereinabove.

34. <u>Further Documentation</u>. Grantors agree that Grantors shall execute and deliver such other and further documents and do and perform such other acts as may be reasonably necessary and proper to carry out the intention of the parties as herein expressed and to effect the purposes of this Deed of Trust and the loan transaction referred to herein. Without limitation of the foregoing, Grantors agree to execute and deliver such documents as may be necessary to cause the liens and security interests granted hereby to cover and apply to any property placed in, on or about the Mortgaged Property in addition to, or as replacement or substitute for any of the Mortgaged Property.

35. <u>Binding on Successors</u>. The covenants herein contained shall inure to the benefit of Beneficiary and Trustee, their heirs, legal representatives, successors and assigns, and shall be binding upon the respective heirs, legal representatives, successors and assigns of Grantors, but nothing in this paragraph shall constitute an authorization for Grantors to sell or in any way dispose of the Mortgaged Property or any part thereof if otherwise prohibited by any of the terms hereof.

36. <u>Definitions</u>. Whereever used in this Deed of Trust, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the words "Deed of Trust" shall mean "this Deed of Trust, Security Agreement and Assignment of Rents and any supplement or supplements hereto"); the word "Grantors" shall mean "Grantors, their respective heirs, legal representatives, successors and assigns, and/or any subsequent owner or owners of the Mortgaged Property"; the word "Beneficiary" shall mean "Beneficiary or any subsequent lawful holder or holders of the Note or other indebtedness secured hereby"; the word "Note" shall mean the "Note secured by this Deed of Trust and any renewals, extensions, rearrangements and enlargements thereof"; the word "person" shall mean "an individual, corporation, trust, partnership or unincorporated association"; and the pronouns of any gender shall include the other genders, and either the singular or plural shall include the other.

37. <u>Oral Waiver</u>. **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL**

EXHIBIT A-2

AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED this the 28 day of _____Oct_____, 2004.

D & R CONSTRUCTORS, INC.

By: _____
WILLIAM PENN RUSHING, President


THE STATE OF TEXAS     §
    §
COUNTY OF HARRIS     §

This instrument was acknowledged before me on this the 28 day of _____Oct_____, 2004, by WILLIAM PENN RUSHING, President of D & R CONSTRUCTORS, INC.

_____
Notary Public, State of Texas

RETURN TO:

_____
_____
_____

TINA WOOLSEY
Notary Public, State of Texas
My Commission Expires
AUG. 20, 2008

FILED FOR RECORD
8:00 AM

NOV - 2 2004

County Clerk, Harris County, Texas

C:\Suzilss\D&R-dt.wpd

Page 18 of 18

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

NOV - 2 2004



COUNTY CLERK
HARRIS COUNTY, TEXAS

EXHIBIT A-2

# Tab G
## Loan Sale Agreement
## 1 CR 391–406

ORIGINALS

 **LOAN SALE AGREEMENT**

THIS LOAN SALE AGREEMENT (this "**Agreement**") is entered into by and between **COMERICA BANK** ("**Seller**") and the party whose name is set forth on the signature page hereof ("**Purchaser**") for purposes of setting forth the terms and conditions upon which Seller agrees to sell and Purchaser agrees to purchase the loans listed in the schedule of loans (the "**Schedule of Loans**") attached hereto as **Attachment 1**.

1.   **Definitions.** The following terms shall be defined as set forth herein:

1.1   "**Agreement**", "**Seller**", "**Schedule of Loan(s)**" and "**Purchaser**" have the meanings set forth in the introductory paragraph and this **Section 1**.

1.2   "**Assignment**" means the Assignment of Assignor's interest in the Loan Documents to be delivered by Seller to Purchaser at Closing in the form of **Attachment 2** to this Agreement with all blanks appropriately completed.

1.3   "**Closing**" means the simultaneous performance by Seller and Purchaser of the acts herein provided to be performed at the Closing for purposes of selling the Loan Package to Purchaser.

1.4   "**Closing Date**" means, July 13, 2012, or such other date for the Closing as may hereafter be otherwise specified by Seller and Purchaser in writing.

1.5   "**Collateral Documents**" means the loan agreements, if any, pursuant to which a Loan was made and all guaranties, deeds of trust, mortgages, security agreements, pledge agreements and other documents, as applicable, which specifically and expressly secure the payment and performance of one or more of the promissory notes evidencing the Loan.

1.6   "**Confidentiality Agreement**" means that certain Loan Sale Confidentiality Agreement dated as of June 5, 2012, executed by Corporate Strategies, LLC for the benefit of Seller in connection with its examination of the Note and the Collateral Documents.

1.7   [Reserved]

1.8   "**Debtor**" means the borrower and each other person or entity who shall be liable for the payment or performance of all or any portion of any Loan or Collateral Document relating to such Loan or who shall own any property that is subject to (or purported to be subject to) a security interest or other lien which secures all or any portion of such Loan or any related Collateral Document.

1.9   "**Excluded Documents**" means those documents and other materials and information which Seller has deemed inappropriate to release to Purchaser including, without limitation, (a) internal reports, memoranda and correspondence, (b) correspondence with legal counsel or regulatory authorities and attorney work product, (c) credit reports, and (d) information subject to confidentiality obligations.

1.10   "**Hazardous Substance Laws**" and "**Hazardous Substances**" shall have the respective meanings set forth in **Section 20** hereof.

1.11   "**Loan**" means (a) the obligations evidenced by a promissory note or loan agreement described on the Schedule of Loans as the same may have been renewed or extended, and (b) all rights, powers, guaranties, security interests and other liens arising under any such promissory note or loan agreement or any Collateral Document which secures such promissory note or loan agreement.

1.12   "**Loan Documents**" means the promissory notes and Collateral Documents specifically described on the Schedule of Loans.

1.13   "**Loan Package**" means the Loan Documents and every Loan evidenced by the Loan Documents.

1

EXHIBIT A

1.14 **"Purchase Price"** means the purchase price for the Loan Package which shall be an amount equal to the sum of (a) the outstanding principal balance of each Loan included in the Loan Package, plus (b) the total amount of interest which has accrued but remains unpaid at the time of Closing upon the promissory notes and loan agreements, as applicable, evidencing each such Loan, plus (c) all fees (including attorney fees) and other charges owed to Seller with respect to each such Loan at the time of Closing, each determined in accordance with the books and records of the Seller and as described on Attachment 1.

1.15 **"Title Policy"** means that certain policy of title insurance issued by Title Resources Guaranty Company on November 2, 2004 under policy number 912-000362 and any endorsements.

2. **Terms and Conditions of Sale.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign, transfer, and convey to Purchaser, and Purchaser agrees to purchase and accept the assignment, transfer and conveyance of all of Seller's rights, title, and interest, as of the time of Closing, in and to the Loan Package. Seller makes no representation or warranty with respect to the assignability of the Title Policy and shall only deliver to Purchaser an original Title Policy to the extent Seller has possession of the original, otherwise Assignor shall deliver a copy.

3. **Purchaser's Obligations.**

3.1 Purchaser shall pay the Purchase Price to Seller at Closing, by cashier's check, certified check or wire transfer. All payments from any Debtor relating to the Loan, including principal and interest, made prior to the Closing shall belong to Seller. All such payments made after the Closing shall belong to Purchaser. Purchaser shall, however, promptly reimburse Seller for any payments made by a Debtor for which Purchaser has received credit against the Purchase Price in the event that a check, draft or other instrument tendered as payment upon any Loan prior to the Closing is dishonored or otherwise uncollectable for any reason.

3.2 At Closing, Purchaser shall deliver an original, fully executed Joinder by Debtor, in the attached form.

3.3 Purchaser shall be responsible and assume liability for the payment of taxes (other than federal income taxes of Seller), if any, arising out of the sale contemplated hereby.

4. **Assignment of Notes and Collateral Documents.**

4.1 After Closing, upon Seller's receipt of the Purchase Price in immediately available funds and fully executed originals of this Agreement and the attached Joinder by Debtor(s): (a) Seller shall execute and deliver the Assignment to Purchaser; (b) Seller shall, at Purchaser's cost and expense, prepare such other assignment(s), including UCC-3 assignment forms ("UCC Assignments"), necessary to record or file in the real property and UCC records of each jurisdiction where the collateral included in the Loan Package is located, (c) Seller shall be responsible for recording the UCC Assignments and shall execute and deliver all other assignments to Purchaser (Except for the UCC Assignments, Purchaser shall be exclusively responsible for the filing and recording of all other documents and for all recording and filing fees, transfer taxes and expenses incident thereto); (d) Seller shall deliver to Purchaser the original Collateral Documents to the extent Seller has possession of the original, otherwise Seller shall deliver a copy. THE DELIVERY OF ANY COLLATERAL DOCUMENT SHALL IN NO WAY CONSTITUTE A REPRESENTATION BY SELLER AS TO ITS ACCURACY, COMPLETENESS, ENFORCEABILITY, VALIDITY, PRIORITY, PERFECTION, OR THE LIKE; and (e) Seller shall deliver to Purchaser the original promissory note evidencing each Loan duly endorsed (by allonge or otherwise) by Seller to Purchaser without recourse, representation or warranty except as specifically provided in Section 7 of this Agreement.

5. **Place of Closing.** Closing shall occur on or before the Closing Date at Seller's office or as otherwise determined by Seller and Purchaser.

6. **Confidentiality Agreement.** Purchaser acknowledges all obligations of "Recipient" under the Confidentiality Agreement, represents and warrants that it is in full compliance with all obligations of "Recipient" under the terms of the Confidentiality Agreement and is not aware of any circumstances which may lead to a breach thereof. Purchaser represents and warrants that all representations and warranties of

2

EXHIBIT A

"Recipient" made in the Confidentiality Agreement are true and correct as if made on the date hereof and at Closing.

7. **Representations and Warranties of Seller**. Seller hereby represents and warrants to Purchaser as of the date hereof and as of the Closing that:

    7.1    The interests to be assigned by Seller pursuant to this Agreement are not subject to any prior assignment by Seller, in whole or in part.

    7.2    Seller is the sole and legal beneficial owner of, and is selling, assigning and transferring to Purchaser, its title to and rights in the Loan Documents.

    7.3    Seller has all requisite power and authority to execute and deliver and to perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Seller in connection herewith.

    7.4    The execution, delivery and performance of this Agreement by Seller have been duly authorized by all necessary corporate action on the part of Seller and do not and will not require any consent or approval of any other person that has not been obtained or violate any provision of Seller's charter or bylaws.

    7.5    This Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws of general applicability relating to or affecting the enforcement of creditors' rights and general equitable principles which may limit the availability of equitable remedies, including without limitation, the remedy of specific performance.

8. **Representations and Warranties of Purchaser**. Purchaser hereby represents and warrants to Seller as of the date hereof and as of the Closing that:

    8.1    Purchaser has all requisite power and authority to execute and deliver and to perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Purchaser in connection herewith.

    8.2    The execution, delivery and performance of this Agreement and the Confidentiality Agreement by Purchaser have been duly authorized by all necessary action on the part of Purchaser and do not and will not require any consent or approval of any other person that has not been obtained or violate any provision of Purchaser's charter, bylaws or other governance documents.

    8.3    This Agreement and the Confidentiality Agreement constitute legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, except as limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws of general applicability relating to or affecting enforcement and general equitable principals which may limit the availability of equitable remedies, including without limitation, the remedy of specific performance.

    8.4    Purchaser is acquiring the Loan Package for its own account and not for the benefit or account of any other person or entity, or with a view toward making any public sale or distribution thereof, and Purchaser does not intend to sell, offer for sale or syndicate securities or fractional interests in Purchaser in connection with the purchase of the Loan Package.

    8.5    Purchaser qualifies either as (a) an "accredited investor," as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (17 C.F.R. §§230.501(e)(1)), or (b) a person or entity who or which possesses the knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of the prospective acquisition and ownership of the Loan.

    8.6    Purchaser acknowledges that the Loan Package will have limited liquidity, and Purchaser represents to Seller that Purchaser has the financial capacity to hold the Loan Package for an indefinite period of time and Purchaser shall bear the economic risk of an outright purchase of the Loan Package.

3

EXHIBIT A

8.7 Purchaser has made such examination, review and investigation of the facts and circumstances necessary to evaluate the Loan Package as it has deemed necessary or appropriate to form a basis for its evaluation of a purchase of the Loan Package. Purchaser is assuming all risk with respect to the completeness, accuracy or sufficiency of the Collateral Documents. Purchaser further acknowledges that in acquiring the Loan Package, Purchaser is assuming the risk of full or partial loss which is inherent with the credit, collateral and collectability risks associated with the Loan.

8.8 Purchaser has agreed to the Purchase Price on the basis of its own independent investigation and credit evaluation of the Loan Package and has not sought or relied upon any representations, information, covenants or agreements of Seller (other than as expressly set forth in this Agreement). Purchaser acknowledges that the amount ultimately received by it in respect of the Loan Package may be less than the Purchase Price, and Purchaser shall have no recourse to Seller for any such deficiency.

8.9 Purchaser is a "United States person" within the meaning of section 7701(a) (30) of the Internal Revenue Code of 1986, as amended.

8.10 Either (a) Purchaser has not engaged any broker or finder or incurred or become obligated to pay any broker's commission or finder's fee, or (b) if Purchaser has engaged any broker or finder with respect to this transaction, Purchaser shall be exclusively responsible for the payment of any broker's commission or finder's fee and hereby agrees to indemnify and hold Seller harmless from and against any claim or liability of any kind whatsoever for payment of any broker's commission or finder's fee payable to any such broker or finder in connection with the transactions contemplated by this Agreement.

9. **Access and Retention of Files and Records**. Purchaser shall permit Seller full and unrestricted access to all Collateral Documents during normal business hours. The Collateral Documents are acknowledged to be "Commercial Bank Records" of Seller. Purchaser shall comply with the rules and regulations of the Comptroller of the Currency and FDIC regarding the length of time Commercial Bank Records are to be maintained, and to otherwise comply with other applicable state and federal law, rules and regulations in such regard.

10. **Purchaser's Duties Regarding Insured Collateral**. Purchaser is exclusively responsible for having itself substituted as loss payee, insured mortgagee or assignee on all hazard insurance or other insurance in which Seller is currently listed as a loss payee, insured mortgagee or assignee. Any suffered loss after Closing due to Seller's cancellation of such insurance or any failure to identify Purchaser as loss payee, insured mortgagee or assignee is the sole responsibility of Purchaser.

11. **Purchaser's Duties Regarding Escrow Accounts**. Purchaser shall assume, undertake, and discharge any and all obligations of Seller as may relate to any escrow, maintenance of escrow, and payments from escrow relating to any Loan. At Closing Seller shall transfer to Purchaser that sum of money held by Seller as of the Closing which represents collected and undisbursed escrow payments less any fees or charges then owing to Seller with respect thereto. Seller makes no warranties or representations of any kind or nature whatsoever, express or implied, as to the sufficiency of this sum to discharge any escrow obligations provided under any Collateral Document or otherwise or as to the accuracy of this sum or as to the propriety of any previous disbursements or payments from any escrow account.

12. **Notice of Claim**. Purchaser shall forthwith notify Seller of any claim, threatened claim, or litigation against Seller regarding the Loan Package which may come to its attention.

13. **Notices**. All notices or deliveries required or permitted hereunder shall be in writing and may be given either by personal delivery, by facsimile transmission or by depositing same enclosed in a sealed wrapper in the United States Mail, with sufficient postage prepaid and sent by registered or certified mail, return receipt requested, addressed to the party set forth below, or such other address or facsimile number as either party may hereafter designate by notice to the other party. Notice given by personal delivery in accordance herewith shall be effective upon delivery at the address of the addressee. Notice given by registered or certified mail in accordance herewith shall be effective on the date of the first attempted delivery of the registered or certified item. Notice by facsimile transmission shall be deemed given upon delivery and verification of communication between transmitting facilities.

4

EXHIBIT A

PURCHASER:

CS Bankers V LLC
123 North Post Oak Lane, ste 440
Houston, Tx 77024
Attn: Tim Connolly
Fax: 713-586-6678
Tim@csbankers.com

SELLER:

COMERICA BANK
2900 North Loop West,
Brookhollow II, 6th floor,
Houston, TX 77092
Attention: Vishakha Deora
Telephone Number: (713) 507 - 7030
Fax: (713) 507 - 7986
Email: vsdeora@comerica.com

14. **Use of Seller's Name**. Purchaser shall not use or permit the use by its agents, successors or assigns, of any name which is similar to the name of Seller. Purchaser will not represent or imply that it is affiliated with, authorized by, or in any way related to Seller (except as to describe itself as assignee of Seller as may be required under disclosure regulations under applicable securities laws). Purchaser and Seller agree and stipulate that any breach of the provisions of this Section will result in actual and substantial damages to Seller in an amount that cannot be determined with precision. It is therefore agreed that, in the event of such breach, in addition to any action Seller may take to prevent further breaches by Purchaser, Purchaser shall pay the sum of Twenty-Five Thousand and No/100 Dollars ($25,000.00) to the Seller for each such breach, as liquidated damages, together with such fees and expenses as Seller may incur in preventing further breaches or the continuation of a breach or in recovering liquidated damages.

15. **Severability**. Each part of this Agreement is intended to be several. If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, such illegality, invalidity, or unenforceability shall not affect the legality, validity or enforceability of the remaining parts of this Agreement, and all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

16. **Construction**. Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural and vice versa, and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender. All Attachments hereto are incorporated herein by reference for all purposes.

17. **Assignment**. This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Attachments hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns; provided, however, it is understood and agreed that Purchaser shall not assign, transfer or otherwise dispose of this Agreement or any rights, benefits or interests hereunder without first obtaining the prior written consent of Seller and any such attempted assignment, transfer or other disposition shall be null and void.

18. **Survival**. Each and every covenant, term, representation, warranty and agreement made by Purchaser or Seller under this Agreement or the Confidentiality Agreement shall survive the Closing and shall not merge into the closing documents but, instead, shall be independently enforceable.

19. **Choice of Law**. TO THE EXTENT NOT CONTROLLED BY FEDERAL LAW, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS. THIS AGREEMENT IS PERFORMABLE IN DALLAS COUNTY, TEXAS, AND ALL DISPUTES AND MATTERS WHATSOEVER ARISING HEREUNDER IN CONNECTION WITH OR INCIDENT TO THIS AGREEMENT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN DALLAS COUNTY, TEXAS, TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE OR COUNTRY.

Detroit_1195557_4

EXHIBIT A

20. **Loan Sale Without Recourse and No Warranties or Representations by Seller.** THE SALE OF THE LOAN PACKAGE SHALL BE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY OTHER THAN AS SPECIFICALLY PROVIDED IN SECTION 7 OF THIS AGREEMENT, AND PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS, AND PURCHASER IS NOT RELYING ON SELLER WITH RESPECT TO, ANY OTHER REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO: (a) THE MARKETABILITY, VALUE, QUALITY OR CONDITION OF THE LOAN PACKAGE; (b) THE VALIDITY, ENFORCEABILITY, OR COLLECTABILITY OF THE PROMISSORY NOTES OR LOAN AGREEMENTS EVIDENCING THE LOAN OR ANY OF THE COLLATERAL DOCUMENTS; (c) THE VALIDITY, PRIORITY, OR PERFECTION OF THE SECURITY INTERESTS OR OTHER LIENS CREATED BY THE COLLATERAL DOCUMENTS; (d) THE STATE OF TITLE TO THE LOAN OR ANY COLLATERAL FOR ANY LOAN, (e) THE PRIORITY OF SECURITY INTERESTS OR OTHER LIENS PURPORTING TO SECURE ANY LOAN, (f) THE ZONING, TAX CONSEQUENCES, PHYSICAL CONDITION, UTILITY CAPACITY OR COMMITMENT FOR UTILITY CAPACITY, OPERATING HISTORY OR PROJECTIONS, VALUATIONS, GOVERNMENTAL APPROVALS OR GOVERNMENTAL REGULATIONS WHICH MAY BE APPLICABLE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, EXISTENCE OF, OR COMPLIANCE WITH APPLICABLE LAWS, RULES, REGULATIONS, RESTRICTIVE COVENANTS OR OTHER ENCUMBRANCES OF, TO OR BY THE PROPERTIES SECURING (OR PURPORTING TO SECURE) ANY LOAN, (g) COMPLIANCE BY ANY DEBTOR OR ANY PROPERTY SECURING (OR PURPORTING TO SECURE) ANY LOAN) WITH ANY FRANCHISE, MANAGEMENT OR OPERATING AGREEMENT, ANY LIQUOR, USE OR OCCUPANCY PERMIT, (h) THE ADEQUACY OF DESIGN, SUITABILITY, QUALITY, DESCRIPTION, DURABILITY, OR QUALITY OF MATERIAL OR WORKMANSHIP OF THE PROPERTIES WHICH ARE COLLATERAL FOR ANY OF THE LOAN, (i) THE COMPLIANCE BY SELLER WITH ANY AND ALL APPLICABLE FEDERAL, STATE OR LOCAL LAWS OR ANY RULES, REGULATIONS, OR ORDINANCES PROMULGATED PURSUANT THERETO, PERTAINING TO OR IN ANY MANNER RELATED TO ANY OF THE LOAN OR THE PROPERTIES WHICH ARE COLLATERAL FOR ANY OF THE LOAN OR ANY STRUCTURES AND IMPROVEMENTS LOCATED THEREON, (j) THE COMPLIANCE OF ANY LOAN WITH ANY STATE OR FEDERAL USURY LAWS OR REGULATIONS, (k) THE ACCURACY OR COMPLETENESS OF ANY INFORMATION, DATA, STATEMENTS, AMOUNTS OR SOURCES OF INFORMATION CONTAINED IN THE LOAN FILES, COLLATERAL DOCUMENTS, OR LOAN PACKAGE, OR (l) ANY OTHER MATTERS PERTAINING TO THE LOAN PACKAGE OR THE PROPERTIES WHICH ARE COLLATERAL (OR PURPORT TO BE COLLATERAL) FOR ANY OF THE LOAN EXCEPT AS SPECIFICALLY PROVIDED IN SECTION 7 OF THIS AGREEMENT. IN ADDITION, SELLER EXPRESSLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE FOREGOING, SELLER DOES NOT MAKE AND HAS NOT MADE ANY REPRESENTATION OR WARRANTY REGARDING THE PRESENCE OR ABSENCE OF ANY HAZARDOUS SUBSTANCES ON, UNDER OR ABOUT THE PROPERTIES SECURING THE LOAN OR THE COMPLIANCE OR NONCOMPLIANCE OF SUCH PROPERTIES WITH THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT, THE SUPERFUND AMENDMENT AND REAUTHORIZATION ACT, THE RESOURCE CONSERVATION RECOVERY ACT, THE FEDERAL WATER POLLUTION CONTROL ACT, THE FEDERAL ENVIRONMENTAL PESTICIDES ACT, THE CLEAN WATER ACT, THE CLEAN AIR ACT, THE TEXAS NATURAL RESOURCES CODE, THE TEXAS WATER CODE, THE TEXAS SOLID WASTE DISPOSAL ACT, THE TEXAS HAZARDOUS SUBSTANCES SPILL PREVENTION AND CONTROL ACT, ANY SO CALLED FEDERAL, STATE OR LOCAL "SUPERFUND" OR "SUPERLIEN" STATUTE, OR ANY OTHER STATUTE, LAW, ORDINANCE, CODE, RULE, REGULATION, ORDER OR DECREE REGULATING, RELATING TO OR IMPOSING LIABILITY (INCLUDING STRICT LIABILITY) OR STANDARDS OF CONDUCT CONCERNING ANY HAZARDOUS SUBSTANCES OR THE HEALTH OR SAFETY OF ANY PERSON OR PROPERTY OR THE ENVIRONMENT (collectively, "Hazardous Substance Laws"). For purposes of this Agreement, the term "Hazardous Substances" shall mean and include those elements or compounds which are contained on the list of hazardous substances adopted by the United States Environmental Protection Agency and the list of toxic pollutants designated by Congress or the Environmental Protection Agency or under any Hazardous Substance Laws. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT PURCHASER HAS BEEN GIVEN THE OPPORTUNITY TO INSPECT THE LOAN AND INVESTIGATE THE CREDIT WORTHINESS OF EACH DEBTOR AND ALL COLLATERAL FOR THE LOAN, AND THEREFORE, PURCHASER WILL BE PURCHASING THE LOAN PACKAGE PURSUANT TO ITS INDEPENDENT EXAMINATION, STUDY, INSPECTION, INVESTIGATION AND KNOWLEDGE OF

6

EXHIBIT A

THE LOAN PACKAGE AND DEBTOR(S). PURCHASER IS RELYING UPON ITS OWN DETERMINATION OF THE QUALITY, VALUE AND CONDITION OF THE LOAN AND THE PROPERTY SECURING PAYMENT OF THE LOAN, AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE LOAN PACKAGE WAS OR WILL BE OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE AND WILL NOT BE OBLIGATED TO MAKE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. FINALLY, PURCHASER UNDERSTANDS THAT SELLER HAS NOT DISCLOSED ITS LOAN FILES TO PURCHASER AND THAT SUCH LOAN FILES OR THE EXCLUDED DOCUMENTS COULD CONTAIN INFORMATION WHICH, IF KNOWN TO PURCHASER, COULD HAVE A MATERIAL IMPACT ON ITS DETERMINATION OF VALUE OF THE LOAN PACKAGE. The Closing shall constitute an acknowledgment by Purchaser that the Loan Package was accepted without representation or warranty, express or implied and otherwise in an "AS IS," "WHERE IS" and "WITH ALL FAULTS" condition based solely on Purchaser's own inspection and investigation except as provided in Section 7 of this Agreement. No event or condition shall entitle Purchaser to have the Loan repurchased by Seller.

21. **DTPA Waiver**. Purchaser has knowledge and experience in financial and business matters that enable Purchaser to evaluate the merits and risks of the transactions contemplated hereby. Purchaser is not in a disparate bargaining position vis-a-vis Seller, and Purchaser hereby waives, to the maximum extent permitted by law, any and all rights, benefits and remedies under the Texas Deceptive Trade Practices - Consumer Protection Act set forth in Subchapter E of Chapter 17 of the Texas Business and Commerce Code (other than Section 17.555 thereof) with respect to any matters pertaining to this Agreement or the transaction contemplated hereby.

**PURCHASER TO CHECK ONE:**

☐ Purchaser has assets in excess of $5,000,000 according to the most recent financial statement of Purchaser prepared in accordance with generally accepted accounting principles.

☒ Purchaser does not have assets in excess of $5,000,000 according to the most recent financial statement of Purchaser prepared in accordance with generally accepted accounting principles.

22. **Jury Trial**. TO THE MAXIMUM EXTENT PERMITTED BY LAW, PURCHASER AND SELLER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN RESPECT OF ANY CONTROVERSY CONCERNING THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

23. **No Oral Agreements**. THIS DOCUMENT AND ALL OTHER DOCUMENTS RELATING TO THIS LOAN SALE CONSTITUTE A WRITTEN LOAN SALE AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

24. **Purchaser's Compliance.** With Laws and Indemnification. Purchaser promises, covenants and agrees that it will comply in all respects with any applicable federal and/or state laws governing or otherwise pertaining in any manner to the collection or enforcement of the Loan including, but not limited to, compliance with the following: the Federal Fair Debt Collection Practices Act (15 U.S.C.A. §§1691 et seq. as amended) and any state statute equivalent thereto and the Fair Credit Reporting Act (15 U.S.C.A. §1681 et seq. as amended), and compliance with all applicable state or federal usury laws and regulations promulgated pursuant thereto. Purchaser hereby indemnifies, defends (through attorneys acceptable to Seller), and holds Seller and all parent companies, subsidiaries and affiliates of Seller and all officers, directors, employees, agents, attorneys and other representatives of Seller and such other entities (all being hereinafter collectively called the "Indemnified Parties") harmless from and against any and all liabilities, claims, demands, losses, damages, penalties, fines, forfeitures, judgments, attorney's fees and other costs, fees and expenses suffered or incurred by Seller or any of the Indemnified Parties which directly or indirectly relate to or arise out of or in connection with (a) any breach by Purchaser of any representation or warranty of Purchaser contained in this Agreement, (b) any failure by Purchaser to carry out any of its obligations under this Agreement, (c) any act or omission of Purchaser occurring after the date of this Agreement, and (d) any claims or damages of any kind arising out of, or relating to, the Loan. The term "Purchaser" as used in this Section 24 shall mean and include all parent companies, affiliates and subsidiaries of Purchaser and all directors, employees, agents, attorneys, representatives, servicing agents and independent contractors of Purchaser, its parent companies, affiliates and subsidiaries who

7

Detroit_1195557_4



EXHIBIT A

participate in any manner in the collection of any Loan. All of the covenants, obligations, terms, remedies and indemnities contained in this Section 24 shall expressly survive the Closing of the transactions contemplated by this Agreement and shall not be merged into any of the closing documents but shall be independently enforceable.

25. **Time of Essence**. Time is of the essence of each and every term of this Agreement.

26. **Counterparts**. This Agreement may be executed in any number of counterparts with the same effect as if all signatories had signed the same document.

**EXECUTED** this 13th day of July, 2012

**PURCHASER:**

CS Bankers V LLC

By: _____

Name: ALISON R. KRATISH

Title: MANAGER


**SELLER:**

COMERICA BANK

By: _____

Name: Vishakha Deora

Title: Vice President

Detroit_1195557_4

EXHIBIT A

## JOINDER BY DEBTOR

For purposes of inducing Purchaser and Seller to enter into this Agreement, which results in direct economic benefit to the undersigned Debtor, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor joins in the execution of this Agreement (a) to evidence Debtor's consent to the transaction hereby contemplated, (b) to confirm that (i) true and correct copies of the Loan Documents are attached hereto as **Attachment 3**, (ii) none of the terms or provisions of the Loan Documents have been modified, amended or waived, except as attached as a part of said **Attachment 3**, (iii) the Loan Documents evidence all of the existing agreements between Debtor and Seller pertaining to the Loan, (iv) the Schedule of Loan attached hereto and all information set forth thereon is true, complete and correct, (v) other than the maturity of the Loan on October 28, 2011 and the failure to pay taxes on the real property collateral, no event of default or event which could, with the giving of notice or the passage of time or both, constitute an event of default, has occurred under the Loan Documents, (vi) there are no unpaid late charges on the Loan and the Debtor has no defenses to or rights of offset against its obligations under any Loan Document, (vii) Debtor will execute and deliver to Purchaser such documents and instruments as Purchaser may request in order to effectuate the purchase of the Loan by Purchaser, (viii) the Loan Documents are valid and enforceable against Debtor and the collateral identified therein, prior to Closing as well as post Closing upon their Assignment to Purchaser; and (ix) Debtor acknowledges that Purchaser and Seller are relying hereon in connection with the purchase and sale of the Loan and would not consummate the sale without Debtor's joinder in this Agreement for the purposes herein stated and (c) to evidence Debtor's agreement to, and Debtor hereby does, RELEASE, COVENANT NOT TO SUE, REMISE, ACQUIT, WAIVE AND FOREVER DISCHARGE AND RELIEVE COMERICA BANK, AND ITS PREDECESSORS, SUCCESSORS, ASSIGNS, OFFICERS, REPRESENTATIVES, PARENT CORPORATIONS, SUBSIDIARIES, AND AFFILIATES (HEREINAFTER ALL OF THE ABOVE COLLECTIVELY REFERRED TO HEREIN AS "BANK"), JOINTLY AND SEVERALLY FROM ANY AND ALL CLAIMS, COUNTERCLAIMS, DEMANDS, DAMAGES, DEBTS, AGREEMENTS, COVENANTS, SUITS, CONTRACTS, OBLIGATIONS, LIABILITIES, ACCOUNTS, OFFSETS, RIGHTS, ACTIONS AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION FOR CONTRIBUTION AND INDEMNITY, WHETHER ARISING AT LAW OR IN EQUITY (INCLUDING WITHOUT LIMITATION, CLAIMS OF FRAUD, DURESS, MISTAKE, TORTIOUS INTERFERENCE, USURY, NEGLIGENCE OR FRAUD IN RATES AND METHODS USED TO COMPUTE INTEREST, AND VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT), WHETHER PRESENTLY POSSESSED OR POSSESSED IN THE FUTURE, WHETHER KNOWN OR UNKNOWN, WHETHER LIABILITY BE DIRECT OR INDIRECT, LIQUIDATED OR UNLIQUIDATED, WHETHER PRESENTLY ACCRUED OR TO ACCRUE HEREAFTER, WHETHER ABSOLUTE OR CONTINGENT, FORESEEN OR UNFORESEEN, AND WHETHER OR NOT HERETOFORE ASSERTED, FOR OR BECAUSE OF OR AS A RESULT OF ANY ACT, OMISSION, COMMUNICATION, TRANSACTION, OCCURRENCE, REPRESENTATION, PROMISE, DAMAGE, BREACH OF CONTRACT, FRAUD, VIOLATION OF ANY STATUTE OR LAW, COMMISSION OF ANY TORT, OR ANY OTHER MATTER WHATSOEVER OR THING DONE, OMITTED OR SUFFERED TO BE DONE BY THE BANK, WHICH HAS OCCURRED IN WHOLE OR IN PART, OR WAS INITIATED AT ANY TIME FROM THE BEGINNING OF TIME UP TO AND IMMEDIATELY PRECEDING THE MOMENT OF THE EXECUTION OF THIS RELEASE.

DEBTOR(S):

D & R Constructors, Inc.

By: _____
William Penn Rushing, President

9

Detroit_1195557 3

EXHIBIT A

STATE OF *Texas*

COUNTY OF *Harris*

    This instrument was acknowledged before me on the _11th_ day of July, 2012, by William Penn Rushing, President of D&R Constructors, Inc., on behalf of said entity.

    (SEAL)

*Denise Nelson*
Notary Public in and for the State of Texas

Denise Nelson
Printed Name of Notary

My Commission Expires: 12/5/2013

DENISE NELSON
MY COMMISSION EXPIRES
DECEMBER 5, 2013

EXHIBIT A

## ATTACHMENT 1

## SCHEDULE OF LOANS

As of July 13, 2012 _____

| Loan (original note amount and date) | Obligor | Principal | Interest | Legal Fees |
|---|---|---|---|---|
| Revolving Real Estate Lien Note ($625,000; October 28, 2004) | D&R Constructors, Inc. | $408,171.59 | $892.88 | $6,000 |

The above-referenced Loan is evidenced by the Revolving Real Estate Lien Note dated October 28, 2004, as modified by the Modification, Renewal and Extension Agreement effective as of October 28, 2009. William P. Rushing and Charles Leon Rushing executed Guaranties dated July 19, 2002 with respect to the obligations of D&R Constructors, Inc. William Penn Rushing also executed Guaranties dated February 14, 2001 and January 17, 2001. Guarantor, Leon Rushing, also executed a Subordination Agreement with respect to indebtedness owing by D&R Constructors, Inc. to Leon Rushing. The Loan is secured by the following additional Collateral Documents:

- Deed of Trust (With Security Agreement, Assignment of Rents, and Financing Statement) dated October 28, 2004 recorded November 2, 2004 at Y032366, Harris County.
- Absolute Assignment of Rents with License Bank dated October 28, 2004.
- Security Agreement dated April 16, 2003.
- UCC Financing Statement Nos. 04-0059681619 and 04-0085252975 (as they may have been continued).

*Total: $415,064.47*

*Reflects $11,000 paid towards interest on 6/28/2012*

11

EXHIBIT A

## ATTACHMENT 2

## ASSIGNMENT OF ASSIGNOR'S INTEREST IN LOAN DOCUMENTS

This Assignment of Assignor's Interest in Loan Documents ("Assignment") is executed and delivered as of July 13, 2012 by Comerica Bank ("Assignor"), a Texas banking association (as successor by merger to Sterling Bank) to CS Bankers V LLC ("Assignee").

**RECITALS:**

Assignor and Assignee entered into a Loan Sale Agreement dated July 13, 2012 ("Loan Sale Agreement"). Capitalized terms not defined in this Assignment shall have the meanings ascribed to them in the Loan Sale Agreement.

All conditions precedent to closing the transactions contemplated by the Loan Sale Agreement have been satisfied or waived, and the parties desire to close the transactions contemplated by the Loan Sale Agreement, all as hereinafter set forth.

**NOW THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is acknowledged, Assignor states as follows:

1.      Assignor does hereby sell, transfer, assign, grant and convey to Assignee Assignor's interest in the Loan and the Loan Documents, including without limitation the Deed of Trust (With Security Agreement, Assignment of Rents, and Financing Statement) dated October 28, 2004 recorded November 2, 2004 at Y032366 and the Absolute Assignment of Rents with License Bank dated October 28, 2004. Such sale, transfer, assignment, grant and conveyance is made without recourse, representations or warranties of any 'nd except as may be otherwise expressly set forth in the Loan Sale Agreement.

2.      This Assignment shall be governed by and construed in accordance with the laws of the State of Texas.

ASSIGNOR:

COMERICA BANK

By: _____

Its: Vishakha Deora, VP

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

This instrument was acknowledged before me on the ___13___ day of July, 2012, by Vishakha Deora

, a ___VP___ of Comerica Bank, a Texas banking association, on behalf of said entity.

(SEAL)



ARACELI SALLY LAFUENTE
Notary Public, State of Texas
My Commission Expires
JANUARY 18, 2015

Araceli Sally LaFuente
Notary Public in and for the State of Texas

Araceli Sally LaFuente
Printed Name of Notary

My Commission Expires: 1.18.15

12

EXHIBIT A

## ATTACHMENT 3

## LOAN DOCUMENTS

EXHIBIT A

Detroit_1195557_4

## ALLONGE AND ENDORSEMENT

THIS ALLONGE is made to, shall be attached to and shall constitute a part of that certain Real Estate Lien Note (as amended, "Note") dated October 28, 2004, in the original principal amount of $625,000 made by D & R Constructors, Inc. in favor in favor of Comerica Bank, as successor by merger to Sterling Bank, for purposes of the endorsement of the Note as set forth below.

**PAY TO THE ORDER OF CS BANKERS V LLC WITHOUT RECOURSE OF ANY KIND AND WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND EXCEPT AS SPECIFICALLY SET FORTH IN THE LOAN SALE AGREEMENT BETWEEN COMERICA BANK AND CS BANKERS V LLC**

This Allonge and the endorsement herein is made as an outright endorsement and assignment and not as a security device of any kind.

Executed this 13th day of July, 2012

COMERICA BANK

By: _____

Its: _Vishakha Devra, VP_____

14

EXHIBIT A

## ASSIGNMENT OF DEED OF TRUST, SECURITY AGREEMENT
## AND ASSIGNMENT OF RENTS

FOR VALUE RECEIVED, **COMERICA BANK**, a Texas banking association, as successor by merger to Sterling Bank ("Assignor") grants, assigns and transfers to **CS BANKERS V LLC** ("Assignee") all of its interest under that certain Deed of Trust, Security Agreement and Assignment of Rents (the "Deed of Trust") dated October 28, 2004, executed by **D & R CONSTRUCTROS, INC.**, as Grantor, to **JAMES W. GOOLSBY, JR.**, Trustee, and recorded on November 2, 2004 **UNDER COUNTY CLERK FILE NO. Y032366** of the Real Property Records of **HARRIS** County, Texas, made with respect to the property described on the attached Exhibit A.

By accepting or recording this Assignment, Assignee agrees on behalf of itself and its successors and assigns, that said bargains, sales, transfers, assignments and conveyances of the Deed of Trust are WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, except as expressly set forth in that certain Agreement, dated as of July 13, 2012, by and between Assignor and Assignee.

Dated this 12ᵗʰ day of July, 2012.

COMERICA BANK, a Texas banking association,
as successor by merger to Sterling Bank

By: _____

Its: Vishakha Devra , VP

Acknowledgment

STATE OF )
)SS.
COUNTY OF )

The foregoing instrument was acknowledged before me this 13 day of July 2012, by Vishakha Devra, a VP of **COMERICA BANK**, a Texas banking association, as successor by merger to Sterling Bank, on behalf of said banking association.

_____
Notary Public, Harris County,

_____
Acting In _____ County, _____
My commission expires: 1.18.15

PREPARED BY:
Jaimee L. Witten
Bodman PLC
6ᵗʰ Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777

WHEN RECORDED RETURN TO
Banking Paralegals
Bodman PLC
6ᵗʰ Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777



ARACELI SALLY LAFUENTE
Notary Public, State of Texas
My Commission Expires
JANUARY 18, 2015

Detroit_1195557_4



## EXHIBIT "A"

### Legal Description of Property

A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas;

EXHIBIT A

# Tab H
## Foreclosure Notices
## 1 CR 439–452

## AFFIDAVIT OF ROBERT A. SCHLANGER

STATE OF TEXAS §
HARRIS COUNTY §

Before me, the undersigned notary, on this day personally appeared Robert A. Schlanger, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Robert A. Schlanger. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge, are true and correct.

I have represented creditors in various non-judicial foreclosure matters over the past twenty years and have developed a standard procedure for the filing, posting and mailing of notices of Trustee's Sales over that period. I always follow the exact same procedure in Harris County, Texas each month.

In July of 2012, I was retained by CS Bankers V, LLC ("CS Bankers") to foreclose on the property known as 6314 Wade Rd., Baytown, Texas 77521 (the "Property") owned by Debtor D&R Constructors, Inc. ("D&R"). In preparing to foreclose on the Property, I reviewed the documents contained in CS Bankers' file, including the underlying Real Estate Lien Note, Modification, Renewal and Extension Agreement, and Deed of Trust (with Security Agreement, Assignment of Rents, and Financing Statement). Pursuant to the documents contained within CS Bankers' file, including the Deed of Trust, it was clear that D&R was the only debtor obligated to pay the debt. Pursuant to the records in CS Bankers' file, D&R's address was 6314 Wade Rd., Baytown, Texas 77521.

I scheduled the foreclosure for September 4, 2012 (the "Foreclosure Date") and went about providing the proper notices pursuant to Section 51.002 of the Texas Property Code and the terms of the Deed of Trust. Specifically, twenty-one days prior to the Foreclosure Date, on August 14, 2012, I posted the Notice of Substitute Trustee's Sale ("Notice") in the designated area of the Harris County Family Law Center, a Harris County Courthouse, located at 1115 Congress Street, Houston, Texas, setting the foreclosure sale at that same location. The posting of the Notice was witnessed by a listing service, which is not a requirement but my standard practice. *See* Exhibit B-1. That same day, August 14, 2012, at 12:52 p.m., I filed the Notice with the County Clerk of Harris County, Texas. *See* Exhibit B-2. By posting the Notice at the Harris County Family Law Center and filing the Notice with the Harris County Clerk's office, I complied with Sections 51.002(b)(1) and (2) of the Texas Property Code and Sections 14(a) and (b) of the Deed of Trust. I followed my standard procedure of filing a copy of the Notice with the Harris County Clerk's Office and thereafter immediately posting a copy of the Notice of Sale at the designated area for such posting established by the Commissioner's Court of Harris County, Texas.

Further, that very same day, August 14, 2012, I sent D&R, via Certified Mail Return Receipt Requested, at 6314 Wade Rd., Baytown, Texas 77521, their last known address according to the

---

EXHIBIT B

records of CS Bankers, a Notice of Posting informing them that a non-judicial foreclosure sale had been scheduled for the first Tuesday of September, 2012 (said date being September 4, 2012). *See* Exhibit B-3. I deposited the Notice of Posting to D&R in the United States mail, postage prepaid completing service pursuant to Sections 51.002(b) and (e) of the Texas Property Code and the terms of the Deed of Trust. I always personally deposit the Notice of Posting at the U.S Post Office in downtown Houston, Texas and I did so on August 14, 2012.

Twenty-one days later, on September 4, 2012, I sold the property located at 6314 Wade Rd. at a Substitute Trustee's Sale held in accordance with the laws of the State of Texas. *See* Exhibit B-4. CS Bankers V, LLC was the lawful owner of the property known as 6314 Wade Rd., Baytown, Texas 77521 subsequent to the foreclosure.

In connection with the foreclosure of 6314 Wade Rd., Baytown, Texas 77521, all required statutory and contractual notices were provided to the only debtor, D & R Constructors, Inc."

_____
Robert A. Schlanger


Sworn to and subscribed before me by Robert A. Schlanger on July 23, 2014.

_____
Notary Public in and for the State of Texas

KATHLEEN MARTIN
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
SEPT. 10, 2017

EXHIBIT B

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

DEFAULT having been made in the payment of the note described in that certain Deed of Trust (with Security Agreement, Assignments of Rents and Financing Statement, herein the "Deed of Trust") executed by **D & R CONSTRUCTORS, Inc.**, a Texas corporation, dated October 28, 2004, and duly recorded on November 2, 2004 under Clerk's File No. Y032366 of the Official Public records of Real Property of Harris County, Texas, conveying to JAMES W. GOOLSBY, JR., Trustee, the following described real property and improvements thereon in Harris County, Texas, to-wit:

**A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas, (herein the "Real Property")** and

WHEREAS, CS BANKERS V LLC, a Texas limited liability company, the legal owner and holder of said Deed of Trust, in accordance with its terms, in writing removed the said James W. Goolsby, Jr., as Trustee and appointed ROBERT A. SCHLANGER as Substitute Trustee; and

WHEREAS, the said Deed of Trust vests power in the Trustee named above to execute the provisions of said Deed of Trust and whereas, the legal owner and holder of said Note and Deed of Trust having declared the whole debt due as secured thereby, and having requested that the undersigned as Substitute Trustee proceed to exercise the power of sale so conferred upon said Trustee, I will, in accordance with the request of the said legal owner and holder, on

### SEPTEMBER 4, 2012

to commence at the hour of **1:00 o'clock p.m.**, or within three (3) hours thereafter, on said day, sell the above described property to the highest bidder for cash at the following location:

The interior area of the first floor lobby of the Family Law Center together with certain covered area located outside the Family Law Center (a Harris County Courthouse located at 1115 Congress Street, Houston, Texas), or as otherwise designated by the Commissioner's Court of Harris County, Texas

being the location designated pursuant to Article 51.002 of the Texas Property Code for the purpose of satisfying all indebtedness secured by the Deed of Trust and the costs of executing this sale.

**The name and address of the sender of this Notice are:**

CS Bankers V LLC, a Texas limited liability company
123 North Post Oak Lane, Suite 440
Houston, Texas 77024

POSTING WITNESSED BY
FORECLOSURE LISTING SERVICE

RECEIVED
AUG 1 4 2012

EXHIBIT B-1

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

ROBERT A. SCHLANGER
Substitute Trustee
5325 Katy Freeway, Suite Two
Houston, Texas 77007
(713) 626-2333

Page 2 of 2 Pages

EXHIBIT B-1

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

DEFAULT having been made in the payment of the note described in that certain Deed of Trust (with Security Agreement, Assignments of Rents and Financing Statement, herein the "Deed of Trust") executed by D & R CONSTRUCTORS, Inc., a Texas corporation, dated October 28, 2004, and duly recorded on November 2, 2004 under Clerk's File No. Y032366 of the Official Public records of Real Property of Harris County, Texas, conveying to JAMES W. GOOLSBY, JR., Trustee, the following described real property and improvements thereon in Harris County, Texas, to-wit:

> A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas, (herein the "Real Property") and

WHEREAS, CS BANKERS V LLC, a Texas limited liability company, the legal owner and holder of said Deed of Trust, in accordance with its terms, in writing removed the said James W. Goolsby, Jr., as Trustee and appointed ROBERT A. SCHLANGER as Substitute Trustee; and

WHEREAS, the said Deed of Trust vests power in the Trustee named above to execute the provisions of said Deed of Trust and whereas, the legal owner and holder of said Note and Deed of Trust having declared the whole debt due as secured thereby, and having requested that the undersigned as Substitute Trustee proceed to exercise the power of sale so conferred upon said Trustee, I will, in accordance with the request of the said legal owner and holder, on

### SEPTEMBER 4, 2012

to commence at the hour of 1:00 o'clock p.m., or within three (3) hours thereafter, on said day, sell the above described property to the highest bidder for cash at the following location:

> The interior area of the first floor lobby of the Family Law Center together with certain covered area located outside the Family Law Center (a Harris County Courthouse located at 1115 Congress Street, Houston, Texas), or as otherwise designated by the Commissioner's Court of Harris County, Texas

being the location designated pursuant to Article 51.002 of the Texas Property Code for the purpose of satisfying all indebtedness secured by the Deed of Trust and the costs of executing this sale.

The name and address of the sender of this Notice are:

> CS Bankers V LLC, a Texas limited liability company
> 123 North Post Oak Lane, Suite 440
> Houston, Texas 77024

2406

Page 1 of 2 Pages



EXHIBIT B-2

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

ROBERT A. SCHLANGER
Substitute Trustee
5325 Katy Freeway, Suite Two
Houston, Texas 77007
(713) 626-2333

Page 2 of 2 Pages

EXHIBIT B-2

**ROBERT A. SCHLANGER, P.C.**
Attorney at Law
5325 Katy Freeway, Suite Two
Houston, Texas 77007
(713) 626-2333
(713) 626-3806 (Telecopier)

August 13, 2012

D & R Constructors, Inc.
6314 Wade Road                           *Certified Mail*
Baytown, Texas 77521                     *Return Receipt Requested*

RE:     Loan (the "Loan") to D & R Constructors, Inc., a Texas corporation (the "Borrower") as evidenced by that certain Note in the original principal sum of $625,000.00 executed by Borrower on October 28, 2004 and payable to the order of Comerica Bank (successor to Sterling Bank) as said note has been assigned to CS Bankers V LLC, a Texas limited liability company ((the "Note") and as secured by that certain Deed of Trust (with Security Agreement, Assignments of Rents and Financing Statement dated as of even date therewith, herein, the "Deed of Trust")

## NOTICE OF POSTING

Gentlemen:

This law firm represents CS BANKERS V LLC, a Texas limited liability company ("Lender") and is authorized to send this letter on its behalf. Reference is made to the Note and Deed of Trust together with any other instruments securing the indebtedness described therein (which shall be called the "Loan Documents") of which the Lender is presently the owner and holder. The Loan Documents include any Modification and/or Extension Agreement(s) filed for record with respect to said indebtedness.

1.      The failure to pay the principal and/or interest as specified in the Note constituted a default under the terms of the Loan Documents. You were previously notified of the default, but the default has not been cured as specified in the previous notice letter to you from or on behalf of the Lender and the cure period specified therein has expired.

2.      YOU ARE NOTIFIED THAT THE ENTIRE UNPAID PRINCIPAL BALANCE THEREOF TOGETHER WITH ALL ACCRUED AND UNPAID INTEREST IS NOW DUE AND PAYABLE ACCORDING TO THE TERMS OF THE NOTE AND ANY EXTENSION AND/OR MODIFICATION AGREEMENT. YOU ARE FURTHER NOTIFIED THAT A NON-JUDICIAL FORECLOSURE SALE HAS BEEN SCHEDULED FOR THE FIRST TUESDAY IN SEPTEMBER, 2012 (SAID DATE BEING SEPTEMBER 4, 2012). THE FORECLOSURE

EXHIBIT B-3

D & r Constructors, Inc.
August 13, 2012
Page 2

_____

SALES HAVE BEEN SCHEDULED AT THE LOCATION(S) SPECIFIED IN THE NOTICES OF SUBSTITUTE TRUSTEE'S SALES WHICH ARE ENCLOSED. A COPY OF THE NOTICE OF SUBSTITUTE TRUSTEE'S SALE IS ENCLOSED WHICH DESIGNATES THE TIME AND FURTHER DESCRIBES THE LOCATION OF EACH SALE.

3.    If you desire to protect your interest in the Property you must pay the full amount due, together with any interest and collection costs prior to the date of the sale referenced above. To determine the amount necessary to pay the Loan in full, please contact your Lender.

4.    In the event the total amount due on the Loan is not received by the Lender on or before the date of the foreclosure, the Lender will request that a sale of the property be conducted and the amount realized at said sale will be applied to the amount due on the Loan.

5.    You are further advised that, if any collateral securing the Loan Documents is foreclosed upon, liquidated or otherwise realized upon, and the amount bid is insufficient to satisfy all sums due and owing under the Loan Documents, including, but not limited to, principal, interest, trustee fees, attorney fees and other expenses incurred in connection therewith, the Lender may proceed with appropriate action to recover such sums.

6.    Despite any past acceptance of late payments or other actual or implied forbearance of any nature by the Creditor, TIME IS HEREBY DECLARED TO BE OF THE ESSENCE of this notification of default and acceleration and intent to enforce each and every covenant, term, condition, and provision of the Loan Documents.

7.    You are further advised that you may have the right to reinstate after acceleration and you may have the right to bring a court action to assert the nonexistence of a default or any other defense to acceleration and sale.

8.    This letter is being forwarded to all guarantors of the Loan pursuant to the terms of those certain Guaranty Agreements executed by each guarantor. By giving notice as specified herein to each guarantor, the Lender shall not be deemed to have agreed to hereafter give any guarantor or any other person any further or additional notice that is not required by the terms of the Loan Documents or by applicable law.

EXHIBIT B-3

D & R Constructors, Inc.
August 13, 2012
Page 3

## FAIR DEBT COLLECTION PRACTICES ACT NOTICE

This letter is an attempt to collect a debt and any information obtained will be used for that purpose. The creditor is CS Bankers V, LLC. This notice is required by the provisions of the Fair Debt Collection Practices Act. We are not attempting to collect money from anyone who has discharged said debt under the Bankruptcy Laws of the United States.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Should you have any questions regarding this matter, please feel free to contact the undersigned at (713) 626-2333.

Very truly yours,

Robert A. Schlanger

RAS/jrd
Enclosures



CERTIFIED MAIL

9414 7112 0108 0351 1335 90

RETURN RECEIPT REQUESTED

ROBERT A. SCHLANGER, P.C.
5325 KATY FWY STE 2
HOUSTON, TX 77007

$5.950
US POSTAGE
FIRST-CLASS
FROM 77007
AUG 14 2012
stamps

EXHIBIT B-3

DEED

N

## SUBSTITUTE TRUSTEE'S DEED

THE STATE OF TEXAS §

COUNTY OF HARRIS §

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, by that certain Deed of Trust dated October 28, 2004, recorded in Clerk's File No. Y032366 of the Official Public Records of Real Property of Harris County, Texas (hereinafter referred to as the "Deed of Trust"), **D & R CONSTRUCTORS, INC.**, a Texas corporation (hereinafter referred to as the "Debtor") conveyed to James W. Goolsby, Jr., Trustee, the property therein described (hereinafter referred to as the "Property") for the purpose of securing and enforcing the payment of that certain promissory note of even date therewith in the original principal sum of SIX HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($625,000.00), payable to the order of **STERLING BANK** and bearing interest and being payable as therein provided (hereinafter referred to as the "Secured Indebtedness"), reference to the Secured Indebtedness and the Deed of Trust being made for all purposes; and

WHEREAS, **CS BANKERS V, LLC** (hereinafter referred to as the "Beneficiary"), the present owner and holder of the Secured Indebtedness and the beneficiary under the Deed of Trust, upon default having occurred in the payment of the Secured Indebtedness and in the performance of the Debtor's covenants contained in the Deed of Trust, did duly request the undersigned as Substitute Trustee to sell the Property;

WHEREAS, the original trustee(s) named in the Deed of Trust declined to act and resigned and Beneficiary, acting under the authority of and in accordance with the Deed of Trust, duly appointed the undersigned as Substitute Trustee; and

WHEREAS, all notices required by the Deed of Trust and by the Texas Property Code, Section 51.002, successor to Article 3810, Texas Revised Civil Statutes, were fully and timely given in the required manner; and

WHEREAS, the undersigned, as Substitute Trustee, on September 4, 2012, at 1:02 o'clock p.m., being the time designated within said Notice of Substitute Trustee Sale or within three (3) hours thereafter, and being between the hours of 10:00 a.m. and 4:00 p.m., local time, sold the hereinafter described property for cash at public auction at the location designated by the Commissioner's Court of Harris County, Texas, having first duly advertised the time, place, terms of sale, and the Property to be sold by posting for at least twenty-one (21) days successively next before the date of such sale, and giving notice thereof as required by the Deed of Trust and the laws of the State of Texas; and

WHEREAS, a copy of the Notice of Substitute Trustee's Sale was filed with the County Clerk of Harris County, Texas at least twenty-one (21) days before the date of such sale as required by law; and

Page 1

EXHIBIT B-4

WHEREAS, after all legal prerequisites and requirements pertaining to such Notice of Sale and such public sale were fully performed in a timely manner, the sale was legally conducted and the Property struck off to:

1EE

**CS BANKERS V, LLC**
**%Robert A. Schlanger**
**5325 Katy Freeway, Suite Two**
**Houston, Texas 77030**

(hereinafter referred to as the "Grantee") being the highest bidder, for the cash sum cited below:

NOW, THEREFORE, in consideration of the premises and of the payment to me (as a credit bid) as of the sum of Four Hundred Thirty-three Thousand Six Hundred Seventy-one and No/100 Dollars ($433,671.00) by the Grantee, I, Substitute Trustee, by virtue of the authority conferred by the Deed of Trust and by the Beneficiary, have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY, subject to any encumbrances to title set forth in the Deed of Trust, unto Grantee, and Grantee's heirs, legal representatives, successors and assigns, the following described tract of land located in Harris County, Texas, to-wit:

A parcel of land being all of Lot 22, Block 23, HIGHLAND FARMS, a subdivision in Harris County, Texas, according to Map or Plat thereof recorded in Volume 7, Page(s) 60, Map Records of Harris County, Texas, being the same property acquired by deeds recorded in County Clerk's File No. U920497 and in County Clerk's File No. T499958, Official Public Records of Harris County, Texas (herein the "Real Property"); and

D

TO HAVE AND TO HOLD the Property, subject to any encumbrances of title expressly set forth in the Deed of Trust, together with all and singular the rights, privileges and appurtenances thereunto belonging or in anywise appertaining unto Grantee, its successors and assigns forever; and, as Substitute Trustee, I by virtue of the authority vested in me by the Deed of Trust, do hereby bind the Debtor and Debtor's heirs, legal representatives, successors and assigns to WARRANT AND FOREVER DEFEND the Property unto the Grantee and its successors and assigns, subject to any encumbrances to title set forth in the Deed of Trust, against all persons claiming or to claim the same or any part thereof as fully as I, ROBERT A. SCHLANGER, Substitute Trustee, can lawfully do; however, without covenants or warranties, express or implied, or any liabilities whatsoever on

Page 2

EXHIBIT B-4

me personally.

DATED this the 4th day of September, 2012.

_____
ROBERT A. SCHLANGER                    1OR
Substitute Trustee

THE STATE OF TEXAS          §

COUNTY OF HARRIS            §

THIS instrument was acknowledged before me on this the 4th day of September, 2012, by ROBERT A. SCHLANGER, Substitute Trustee, in the capacity therein stated.

_____
Notary Public in and for
The State of Texas

JULIE R DANIEL
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES-
DEC. 6, 2014

My commission expires: 12-6-14

_____
[Printed Name of Notary]

After recording return to:

Robert A. Schlanger, P.C.
Attorney at Law
5325 Katy Freeway, Suite 2
Houston, Texas 77007

Page 3

ER 036 - 09 - 1755

20120408147
# Pages 4
09/05/2012    14:16:24 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 24.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

EXHIBIT B-4

# Tab I
## TEX. PROP. CODE § 51.002

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
   Property Code (Refs & Annos)
      Title 5. Exempt Property and Liens
         Subtitle B. Liens
            Chapter 51. Provisions Generally Applicable to Liens

V.T.C.A., Property Code § 51.002

§ 51.002. Sale of Real Property Under Contract Lien

Effective: October 1, 2013
Currentness

(a) A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month. Except as provided by Subsection (h), the sale must take place at the county courthouse in the county in which the land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located. The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county. The sale must occur in the designated area. If no area is designated by the commissioners court, the notice of sale must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area.

(b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

   (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

   (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

   (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

(b-1) If the courthouse or county clerk's office is closed because of inclement weather, natural disaster, or other act of God, a notice required to be posted at the courthouse under Subsection (b)(1) or filed with the county clerk under Subsection (b)(2) may be posted or filed, as appropriate, up to 48 hours after the courthouse or county clerk's office reopens for business, as applicable.

(c) The sale must begin at the time stated in the notice of sale or not later than three hours after that time.

(d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

(e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

(f) Each county clerk shall keep all notices filed under Subdivision (2) of Subsection (b) in a convenient file that is available to the public for examination during normal business hours. The clerk may dispose of the notices after the date of sale specified in the notice has passed. The clerk shall receive a fee of $2 for each notice filed.

(f-1) If a county maintains an Internet website, the county must post a notice of sale filed with the county clerk under Subsection (b)(2) on the website on a page that is publicly available for viewing without charge or registration.

(g) The entire calendar day on which the notice of sale is given, regardless of the time of day at which the notice is given, is included in computing the 21-day notice period required by Subsection (b), and the entire calendar day of the foreclosure sale is excluded.

(h) For the purposes of Subsection (a), the commissioners court of a county may designate an area other than an area at the county courthouse where public sales of real property under this section will take place that is in a public place within a reasonable proximity of the county courthouse as determined by the commissioners court and in a location as accessible to the public as the courthouse door. The commissioners court shall record that designation in the real property records of the county. A designation by a commissioners court under this section is not a ground for challenging or invalidating any sale. A sale must be held at an area designated under this subsection if the sale is held on or after the 90th day after the date the designation is recorded. The posting of the notice required by Subsection (b)(1) of a sale designated under this subsection to take place at an area other than an area of the courthouse remains at the courthouse door of the appropriate county.

(i) Notice served on a debtor under this section must state the name and address of the sender of the notice and contain, in addition to any other statements required under this section, a statement that is conspicuous, printed in boldface or underlined type, and substantially similar to the following: "Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately."

**Credits**
Acts 1983, 68th Leg., p. 3525, ch. 576, § 1, eff. Jan. 1, 1984. Amended by Acts 1984, 68th Leg., 2nd C.S., ch. 18, § 3(b), eff. Oct. 2, 1984; Acts 1987, 70th Leg., ch. 540, § 1, eff. Jan. 1, 1988; Acts 1993, 73rd Leg., ch. 48, § 5, eff. Sept. 1, 1993; Acts 2003, 78th Leg., ch. 554, § 2, eff. Jan. 1, 2004; Acts 2005, 79th Leg., ch. 533, § 1, eff. June 17, 2005; Acts 2005, 79th Leg.,

ch. 555, § 1, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 903, § 2, eff. June 15, 2007; Acts 2011, 82nd Leg., ch. 252 (H.B. 1127), § 2, eff. Jan. 1, 2012; Acts 2011, 82nd Leg., ch. 592 (S.B. 101), § 1, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 52 (H.B. 584), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 17.001, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 642 (H.B. 699), § 2, eff. Oct. 1, 2013.

Notes of Decisions (871)

V. T. C. A., Property Code § 51.002, TX PROPERTY § 51.002
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Tab J
## TEX. PROP. CODE § 51.0075

Vernon's Texas Statutes and Codes Annotated
  Property Code (Refs & Annos)
    Title 5. Exempt Property and Liens
      Subtitle B. Liens
        Chapter 51. Provisions Generally Applicable to Liens

V.T.C.A., Property Code § 51.0075

§ 51.0075. Authority of Trustee or Substitute Trustee

Effective: September 1, 2009
Currentness

(a) A trustee or substitute trustee may set reasonable conditions for conducting the public sale if the conditions are announced before bidding is opened for the first sale of the day held by the trustee or substitute trustee.

(b) A trustee or substitute trustee is not a debt collector.

(c) Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee or substitute trustees to succeed to all title, powers, and duties of the original trustee. A mortgagee or mortgage servicer may make an appointment or authorization under this subsection by power of attorney, corporate resolution, or other written instrument.

(d) A mortgage servicer may authorize an attorney to appoint a substitute trustee or substitute trustees on behalf of a mortgagee under Subsection (c).

(e) The name and a street address for a trustee or substitute trustees shall be disclosed on the notice required by Section 51.002(b).

(f) The purchase price in a sale held by a trustee or substitute trustee under this section is due and payable without delay on acceptance of the bid or within such reasonable time as may be agreed upon by the purchaser and the trustee or substitute trustee if the purchaser makes such request for additional time to deliver the purchase price. The trustee or substitute trustee shall disburse the proceeds of the sale as provided by law.

**Credits**

Added by Acts 2003, 78th Leg., ch. 554, § 1, eff. Jan. 1, 2004. Amended by Acts 2005, 79th Leg., ch. 1231, § 1, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 903, § 4, eff. June 15, 2007; Acts 2009, 81st Leg., ch. 323, § 1, eff. Sept. 1, 2009.

Notes of Decisions (7)

V. T. C. A., Property Code § 51.0075, TX PROPERTY § 51.0075
Current through the end of the 2015 Regular Session of the 84th Legislature